MAXWELL (STALKER v.). See Case No. 13,283.

MAXWELL (STEEGMAN v.). See Case No. 13,344.

MAXWELL (THOMSON v.). See Case No. 13,983.

MAXWELL (TUCKER v.). See Case No. 14,-224.

MAXWELL (UNITED STATES v.). See Cases Nos. 15,749 and 15,750.

MAXWELL (VACCARI v.). See Case No. 16,810.

MAXWELL (VAN ZANDT v.). See Case No. 16,884.

MAXWELL (WARBURG v.). See Case No. 17,142.

MAXWELL (WELD v.). See Case No. 17,-374.

---

## Case No. 9,324a.

MAXWELL v. WILLIAMS.

[Hempst. 172.] [1]

Superior Court, Territory of Arkansas. Jan., 1832.

DISMISSAL OF APPEAL—RELEASE OF BAIL.

1. After the dismissal of an appeal, the appellate court has nothing further to do with the case.

2. Delay in suing out execution releases bail under the statute.

Appeal from Arkansas circuit court.

Before JOHNSON, ESKRIDGE, and CROSS, JJ.

OPINION OF THE COURT. The record in this case shows the following state of facts: [Arden] Williams, the appellee, obtained a judgment before a justice of the peace, against Walter Tucker and James Bennett, on the 13th of March, 1830; and on the same day [John] Maxwell, the appellant, became bound as special bail for the stay of execution, which expired on the 13th of July, 1830. On the 17th of August, upwards of a month after the expiration of the stay, an execution was issued on the judgment, and returned the 7th of September, indorsed "No property found." A scire facias was sued out on the 9th of December following, requiring Maxwell to show cause why an execution should not issue against him, jointly with Tucker and Bennett, and upon the same day an execution was awarded by the justice. Maxwell appealed to the circuit court, and at the first term thereafter, on the motion of Williams, by his attorney, the appeal was dismissed, and the judgment of the justice confirmed. From this decision Maxwell prayed an appeal to this court.

Two points are relied on to reverse the judgment: First, it is contended that the circuit court erred in confirming the judgment of the justice, after dismissing the appeal; and, second, that Williams, by failing to issue execution on his judgment for upwards of thirty days after the expiration of the stay, released the special bail. It will be necessary only to notice the first objection. After dismissing the appeal, it is very clear that the circuit court had nothing further to do with the case. It then stood before the justice of the peace in the same situation it did before the appeal was prayed. If the appeal had been entertained Maxwell undoubtedly had the right to show cause why an execution should not issue against him in the same manner he could have done upon the return of the scire facias before the justice. Upon the second point, were it necessary to decide, there would be a unanimity of opinion, that the delay to sue out execution released the bail. Execution must be issued against the principal immediately on the expiration of the stay. Ter. Dig. 392. Judgment reversed.

---

MAXWELL (WILSON v.). See Case No. 17,-824.

MAXWELL (WINSLOW v.). See Case No. 17,882.

---

## Case No. 9,325.

In re MAY et al.

[7 Ben. 238; [1] 9 N. B. R. 419.]

District Court, S. D. New York. March 28. 1874.

BANKRUPTCY—PROVABLE DEBT—RENT—MONTHLY INSTALMENTS—TIME OF BANKRUPTCY.

1. Premises were leased by C. to M. & B., by lease dated February 17th, 1871, and expiring May 1st, 1873. The rent was payable monthly, the rent for January, 1873, becoming due February 1st, 1873. On the 28th of December, 1872, a petition in bankruptcy was filed against M. & B., and the adjudication was made before February 1st, 1873. C. filed a proof of debt for the rent from January 1st, 1873, to May 1st, 1873, to which the assignee objected: Held, that, under the 19th section of the bankruptcy act [of 1867 (14 Stat. 525)], the rent for that period was not provable.

[Cited in Bailey v. Loeb, Case No. 739; Re Hufnagel, Id. 6,837.]

2. The words "time of the bankruptcy," in that section, mean the time of the filing of the petition.

[In the matter of August May and Aaron Berwin, bankrupts.]

By the register:

[I, the undersigned register in charge of the above entitled matter, do hereby certify that the firm of T. H. & T. W. Conkling have proved a claim before me against the said estate, of one thousand one hundred and one dollars and sixty-four cents, for rent of premises leased by them to the bankrupts from the 1st day of May, 1871, to the 1st day of May, 1873, at a rental of three thousand five hundred dollars, payable monthly on the first day of each and every

---

[1] [Reported by Samuel H. Hempstead, Esq.]

[1] [Reported by Robert D. Benedict. Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission.]

month, beginning with the first day of June, 1871, claiming the sum aforesaid as and for the rent due under the said lease, from January 1st, 1873, to May 1st of the same year, after crediting the sum of sixty-five dollars, paid them by the assignee for the use of said premises after the bankruptcy. The petition in bankruptcy was filed on the 28th day of December, 1872, the rent of said premises having been paid up to the 1st of January, 1873. The assignee objects to the proof on the grounds: (1) That after the bankruptcy he surrendered the premises to the landlords by delivering the keys to their agents. (2) That he hired the premises from the agent of the landlords, during the month of January, 1873, at a stipulated price of five dollars a day, and paid for the days he used and occupied the same, the sum of sixty-five dollars. (3) The assignee claims that the claim is not of the character specified in section nineteen, and cannot, therefore, under the last clause of that section, be allowed against the estate; that the language of the seventh clause of section nineteen, providing that, "where the bankrupt is liable to pay rent, which rent falls due at fixed or stated periods, the creditor may prove for a proportionate part thereof up to the time of the bankruptcy," followed by the words in the last clause of the section, "no debt, other than those above specified, shall be proved or allowed against the estate," in effect forbids the proving of a claim for rent which accrued subsequently to the bankruptcy, and the parties desire said issue to be certified to the court for decision. Respectfully submitted.][2]

Brewster & Crowell, for lessors.
T. Saunders, for assignee.

BLATCHFORD, District Judge. T. H. & T. W. Conkling have proved a claim against the bankrupts for $1,101 64 and interest from May 1st, 1873, "being a balance for rent of premises" let to the bankrupts by T. H. & T. W. Conkling, by a lease bearing date February 17th, 1871, and expiring May 1st, 1873. The rent claimed in the proof is for the four months from January 1st, 1873, to May 1st, 1873, at the rate of $291 66 per month, less a credit of $65 00 as paid. The assignee of the bankrupts has filed with the register an objection to such claim and proof of debt, on the ground that the alleged debt or claim is not provable against the said estate under the bankruptcy act, "for the reason that the said debt or claim, or any part thereof, did not exist at the time of the filing of the petition for the adjudication of bankruptcy herein, to wit, the 28th day of December, 1872." The register has taken testimony in the premises, not under an order made by him, in pursuance of general order No. 34, on a petition to him for the re-examination of the claim, but ap-

parently by the consent of the parties. Thereupon the register has certified to the court, under section 4 of the act, the question or issue as to whether the claim should be allowed. He also has certified the testimony and the proof of claim. The lease forms a part of the testimony.

The petition in bankruptcy was filed on the 28th of December, 1872. The rent under the lease was fully paid up to the 1st of January, 1873, before the petition in bankruptcy was filed. The rent reserved by the lease was payable monthly, on the first day of each month, at the rate of $3,500 per year. The lease was for two years from the 1st of May, 1871. The first rent became payable on the 1st of June, 1871. The rent for the month from January 1st, 1873, to February 1st, 1873, did not become payable till February 1st, 1873. The adjudication of bankruptcy was made before February 1st, 1873.

The 19th section of the act provides, "that all debts due and payable from the bankrupt at the time of the adjudication of bankruptcy, and all debts then existing but not payable until a future day, a rebate of interest being made when no interest is payable by the terms of contract, may be proved against the estate of the bankrupt. * * * Where the bankrupt is liable to pay rent or other debts falling due at fixed and stated periods, the creditor may prove for a proportionate part thereof up to the time of the bankruptcy, as if the same grew due from day to day, and not at such fixed and stated periods. If any bankrupt shall be liable for unliquidated damages arising out of any contract or promise, * * * the court may cause such damages to be assessed in such mode as it may deem best, and the sum so assessed may be proved against the estate. No debts other than those above specified shall be proved or allowed against the estate."

It is contended, for the lessors, that this claim for rent was, under the 19th section, a debt existing at the time of the adjudication of bankruptcy, but not payable until a future day, and that, therefore, it may, by the terms of that section, be proved against the estate. The case is sought to be likened to that where an article is purchased to be paid for in instalments, at fixed periods, and only part of the instalments are paid before an adjudication of bankruptcy, in which case, it is contended, the vendor can prove his debt for the remaining instalments, a rebate of interest being made if no interest is payable by the terms of the contract. This might be so if there were not a special provision for the case of rent falling due at fixed and stated periods. And there seems to be a reason for such special provision in regard to rent, in the fact that, where an article is purchased, the consideration is, or is assumed to be, executed, while, in the case of rent, the consideration is as-

[2] [From 9 N. B. R. 419.]

sumed to be not executed, but executory, the use and occupation being in futuro. But, whatever the terms of payment of rent may be, the creditor may prove for a proportionate part thereof up to the time of the bankruptcy, as if the same grew due from day to day, and not at the periods fixed by the contract of letting. The provision in regard to rent not yet due, and to proving for a proportionate part of it, with the further provision that no other than the specified debts shall be proved, makes it entirely plain that this debt, as proved, cannot be allowed. Whatever is not provable will not be discharged. The provisions in regard to what debts may be proved are arbitrary, but such provisions do not affect the existence or validity of such debts as are not provable, nor does a discharge release them. If the debt is provable, it comes in for a dividend, and can, unless it is an excepted debt, be discharged. If it is not provable, it does not come in for a dividend, but it will not be discharged.

The words "the time of the bankruptcy" mean the time when the petition was filed, to which time the adjudication relates. The rent to that time has been paid. The objection of the assignee to the proof of debt, as made, is sustained, and the claim set forth in the proof of debt is disallowed.

[For subsequent proceedings in this litigation, see Case No. 9,328.]

---

## Case No. 9,326.

### In re MAY.

[2 Cin. Law Bul. (1877) 152.]

District Court, S. D. Ohio.

BANKRUPTCY—HOMESTEAD — EXEMPTION — MORTGAGED PROPERTY—PROCEEDS FROM SALE.

1. The head of the family, owning but a single piece of real estate, upon which he resided with his family, but which was mortgaged by himself and wife for more than its value, after condition broken, under the exemption laws of Ohio, is not the owner of a homestead.

2. Such head of family is entitled to hold exempt from execution and sale personal property, to be selected by him, not exceeding in value five hundred dollars.

3. Where all the personal property owned by him at the commencement of the proceedings in bankruptcy was covered by a chattel mortgage, he could make no such selection, and the assignee had no authority to set off the property to him.

4. Under such circumstances, the bankrupt would be entitled to the exemption out of the proceeds of such personal property; and, upon his application, the court would direct its payment by the assignee.

[In the matter of Henry May, a bankrupt.]

E. Devor, for bankrupt.

M. Kary and Howard Douglass, for assignee and general creditors.

SWING, District Judge. This case comes before me upon the application of the bankrupt for the allowance of five hundred dollars in lieu of a homestead. The facts upon which the application is based are as follows: The bankrupt is the head of a family, and, at the time of filing his petition in bankruptcy, was the owner of a house and lot in the town of Piqua, Ohio, and which was then, and now is, occupied by him as the residence of himself and family, and was not the owner of any other real estate. That there are valid mortgages upon said property, in whose execution the wife of the bankrupt joined, and which, the bankrupt claims, amount to more than the value of the property. The personal property of the bankrupt consisted of a stock of drugs, upon which there was a chattel mortgage of one thousand dollars. This property was sold, and realized to the assignee about fifteen hundred dollars after the payment of the mortgage, and which remains in his hands for distribution.

Among other provisions of the bankrupt law [of 1867 (14 Stat. 517)] relating to exemptions is the following: "And such other property not included in the foregoing exceptions as is exempted from levy and sale on execution, or other process or order of any court, by the laws of the state in which the bankrupt has his domicil at the time of the commencement of the proceedings in bankruptcy, to an amount not exceeding that allowed by such state exemption laws in force in the year eighteen hundred and seventy-one." By the laws of Ohio, the head of each family is entitled to hold exempt from sale on execution a homestead, not exceeding in value the sum of one thousand dollars; and, if he be not the owner of a homestead, he is entitled to hold exempt from execution and sale personal property to be selected by him, not exceeding in value five hundred dollars. It is further provided by the laws of Ohio that when a homestead shall be charged with liens, some of which shall preclude the allowance of a homestead to either the head of a family, or the wife, and others of the liens do not preclude the allowance of such homestead, and a sale of such homestead is had, then, of the proceeds of such sale, after the payment of the liens which preclude the allowance of a homestead, the balance, not exceeding five hundred dollars, shall be awarded in lieu of such homestead.

It is objected that the bankrupt is not entitled to the allowance prayed for, because he is the owner of a homestead. If the bankrupt, within the spirit and meaning of the Ohio law, is the owner of a homestead, the allowance must be refused. In a general sense, the bankrupt may be said to be the owner of a homestead; he is in the possession of a house and lot, and holds a deed therefor; but he has executed mortgages upon it for a greater amount than the value thereof, and these mortgages are overdue.

The doctrine of the supreme court of Ohio is, that as between the parties to a mortgage and those claiming under them, the legal