red stock. Kent v. Mining Co., 12 Hun, 56, 78 N. Y. 159; Campbell v. Zylonite Co., 122 N. Y. 455, 25 N. E. 853.

It is also urged in support of the demurrers that, the Elmira Company being a foreign corporation, and there being no allegation that any of the officers reside in this state, any decree that the court may make could not be enforced against it. The Elmira Company has not raised that question, and may never raise it; and it is quite probable from the allegations of the complaint as to the purpose of its incorporation, as to the place it has its office and is doing business, that a majority of its officers, and the books, records, and property of the company are within the jurisdiction of this court, and that its decree, if in favor of the plaintiffs, would be obeyed, or would be enforced. The question is irrelevant to these demurrers, which do not present the question of jurisdiction, and it concerns the Elmira Company only. The complaint states a sufficient cause of action for equitable relief.

Whether, when all the facts are developed on the trial, it will appear that the court should refrain from granting the decree prayed for on the ground that it could not be enforced, or whether the relief should be granted because a part compliance can be compelled here on the ground that the case may be so plain that the decree would be adopted and enforced by the courts of New Jersey, are questions that will be addressed to the sound discretion of the trial court; but, although argued at length, they are not presented by these demurrers. A demurrer for want of equity cannot be sustained unless the court is satisfied that no proof properly admissible under the complaint can make the subject-matter of the suit a proper case for equitable cognizance. Bleeker v. Bingham, 3 Paige, 246; Le Roy v. Veeder, 1 Johns. Cas. 427. Each of the demurrers is, therefore, overruled, with leave to the demurring defendants to interpose an answer within 20 days, on paying the costs of the demurrer. Let an interlocutory judgment be entered accordingly.

Ordered accordingly.

---

(33 App. Div. 397.)

## In re LUDEKE.

### LUDEKE v. THRALL.

(Supreme Court, Appellate Division, First Department. October 21, 1898.)

1. ASSIGNMENT FOR CREDITORS—CONSTRUCTION.

An assignment requiring the assignee to pay "all the debts and liabilities now due or to grow due" from the assignor warrants the assignee's surrender of an unexpired lease, and his payment of a reasonable sum for the acceptance thereof and a release from all claims against the assignor thereunder; the assignee having acted in good faith, and the compromise being beneficial to the assigned estate.

2. LEASE—OPTION TO RELET.

Where a lessor by the terms of the lease may relet if he thinks advisable, his rights under the lease do not depend on his intention to exercise his option, but on his final act.

Appeal from special term, New York county.

In the matter of the accounting of Adolph Ludeke, under an assignment for the benefit of creditors of Edwin A. Thrall. From an

order of the special term confirming a referee's report on the account. of the assignee, and overruling exceptions thereto, and an intermediate order so far as it sustains an objection to a payment made by the assignee, the assignee appeals. Modified.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

Everett P. Wheeler, for appellant.

George S. Coleman, for respondent.

BARRETT, J. The question presented by this appeal, under an arrangement of counsel, is whether the payment of $2,500 made by the assignee to the assignor's landlord in settlement of all claims against the assignor and the assigned estate was valid. It was disallowed by the referee upon the assignee's accounting, and also by the court at special term. The appellant agrees, if the question on this head be decided in his favor, to waive a second ground of appeal with regard to his commissions. The referee reported that all the creditors had been paid in full, except one Dr. Swan, who stated that he preferred to look to the assignor personally for his claim of but $5. The accounting was consequently between the assignor and the assignee, and the former alone objected to the allowance of the item in question. The assignment was executed and delivered on the 30th day of January, 1896. At that date the assignor was in possession of premises No. 3 Maiden lane, under a lease expiring upon the 1st day of May, 1900, at a rental of $8,000 per annum to the 1st day of May, 1897, and thereafter at a yearly rental of $9,000. The lease contained the following provision:

"Third. That, if the party of the second part shall abandon or vacate said premises, the party of the first part shall be at liberty, if he shall think advisable, to relet the same; and, if sufficient shall not be realized on such reletting to satisfy the rent hereby reserved, the party of the second part agrees to pay or satisfy any deficiency which may arise thereon."

The assignment required the assignee to pay and discharge in full "all the debts and liabilities now due or to grow due" from the assignor. The premises in question were used by the assignor as a jewelry shop. The assignee took possession of these premises, and used them for auction sales of goods until about the middle of April, 1896, and he paid the monthly rent reserved in the lease to the 1st day of May, 1896. The landlord never exercised the option given him by the third paragraph of the lease, which we have quoted. On the contrary, he entered into a written agreement with the assignee upon the 29th day of February, 1896, for the surrender of the lease upon the 13th of the following April, and for the complete release thereupon of the assignor and of the assigned estate. This agreement provided that the assignee should pay the monthly sums accruing under the lease down to the 1st of the following May, and, upon the surrender, the additional sum of $2,500, in full settlement of all the landlord's claims against the assignor and the assigned estate. It was also provided that the agreement was subject to the approval of the supreme court. This agreement was fully executed. The assignee paid the rent to the 1st day of May, and also the specified sum of $2,500. He

acted throughout under the advice of counsel, and he obtained an or-
der of the supreme court approving of the compromise agreement. It
is true that the assignor had no notice of the application to the supreme
court, and that he personally objected to the compromise. There can
be no doubt, however, that the assignee acted in perfect good faith, and
that the compromise, as matter of fact, was greatly to the assignor's
benefit, and to that of the assigned estate. The rental deficit would
certainly have quite considerably exceeded the very moderate sum
which the landlord accepted for the cancellation of the lease. The
referee and the court below have in effect charged the assignee per-
sonally with this payment, and they have done so mainly upon the
ground that he exceeded his power, in that he was limited by the terms
of the assignment to the payment of past debts. The $2,500 pay-
ment was treated by the referee and the court as the payment of a
new debt created subsequent to the assignment. We think this an
erroneous view of the compromise agreement, and of the circumstan-
ces which surrounded it. The assignor's liability under the lease
was certainly not a new debt created after the execution of the as-
signment. The contract and the entire liability of the assignor there-
under existed upon the day when the assignment was delivered. The
assignor was directed to pay debts due and to grow due; in other
words, sums payable under existing contracts, whether due in præsenti
or payable in futuro. So long as the landlord did not avail himself
of the option contained in the third paragraph of the lease, he un-
doubtedly "had a valid and certain claim against the assigned estate
for the rent reserved in the lease." In re Hevenor, 144 N. Y. 271, 39
N. E. 393. It is claimed that the landlord here did exercise this
option, but that claim is not borne out by the facts. The landlord
and his agents undoubtedly made efforts to secure a new tenant. So,
also, did the assignee. No offer, however, was accepted by the land-
lord, or reduced to a completed contract, until after the execution of
the compromise agreement. Then, too, the offer was for a lease of
only three-fifths of the premises at an annual rental of but $4,800.

It is also claimed that the landlord's act in authorizing his agents
to relet the premises showed his intention to exercise his option. That
does not follow. His intention was to do just what he did, namely,
claim from the assignee all that he was entitled to under his lease,
and save both for himself and the assigned estate what he could by
securing a new and solvent tenant. And in this respect the assignee
was right in co-operating with him. But, even if the landlord in-
tended throughout to exercise his option, he did not do so. His rights
depend upon his final act, and not upon his precedent intention. His
final act was to compromise his claim for all that was "to grow due"
under the lease, and thereupon to cancel the instrument. His relet-
ting was distinctly under the right conferred by this compromise
agreement, and not under the third paragraph of the lease. We have
carefully examined all the evidence presented by the learned counsel
for the assignor, and we see nothing therein to bring this case within
that of In re Hevenor, supra. On the contrary, the distinction be-
tween the two cases is marked. The claim in the Hevenor Case was
for an actual deficiency subsequently resulting from the reletting un-

der the exercise of the option. Here the claim was naturally for the rent to grow due under the lease. When the compromise agreement was made, there was in fact no other subject of compromise, inasmuch as the premises had not then been relet, and consequently the landlord had not definitely exercised his option. The probable deficiency upon the contemplated reletting undoubtedly played an important part in the compromise, and had its debatable bearing upon the sum finally agreed upon. But it was not an independent factor in the matter. The Hevenor Case was reviewed and fully explained by Gray, J., in People v. St. Nicholas Bank, 151 N. Y. 592, 45 N. Y. Supp. 1129, and the present case is clearly within the distinction there pointed out. We think, therefore, that the payment in question was a just settlement of an existing contract obligation, for which the estate was liable, and that it should have been allowed to the assignee. The settlement was, upon all the facts, a fair exercise of judgment upon the latter's part; and his judgment was fortified, as we have seen, both by the advice of counsel and by the approval of the court. Even without the latter support, however, the payment was, under the circumstances, judicious and proper.

The order appealed from should therefore be modified by overruling the assignor's objection to the payment by the assignee of $2,500 to Byam K. Stevens, and sustaining the assignee's exceptions upon that head. It should accordingly direct the payment of the balance in the assignee's hands to C. H. Windsor, by virtue of the assignment to him from the assignor. The costs of the accounting and of the appeal should be allowed to the assignee, to be paid by the assignor. All concur.