## In re WHITNEY.

(Supreme Court, Appellate Division, First Department.    April 21, 1911.)

1. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 307*)—OPERATION—OBLIGA-
   TION OF ASSIGNEE.
      An assignee for the benefit of creditors must distribute the estate ac-
   cording to the assignment, and the question of the propriety of allowing
   claims presented depends solely on the assignment without reference
   to general equities or other remedies against the assignor.
      [Ed. Note.—For other cases, see Assignments for Benefit of Creditors,
   Cent. Dig. §§ 893–899; Dec. Dig. § 307.*]

2. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 195*)—CONSTRUCTION—DEBTS
   INCLUDED.
      An assignment for the benefit of creditors by a lessee for a term of
   years, which directs the assignee to pay the "debts and liabilities now
   due or to grow due," includes a claim for rent accruing after the as-
   signment.
      [Ed. Note.—For other cases, see Assignments for Benefit of Creditors,
   Cent. Dig. §§ 615–624; Dec. Dig. § 195.*]

3. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 307*)—REFERENCE—POWER OF
   REFEREE.
      A reference to hear and determine the issue arising on a claim re-
   jected by an assignee for the benefit of creditors authorizes the referee
   to determine, not only the propriety of the rejection, but also the ques-
   tion of the amount of the claim to be allowed if the rejection was im-
   proper.
      [Ed. Note.—For other cases, see Assignments for Benefit of Creditors,
   Cent. Dig. § 898; Dec. Dig. § 307.*]

4. ASSIGNMENTS FOR BENEFIT OF CREDITORS (§ 298*)—CLAIMS—VALIDITY.
      A lessor who conveys the property may not prove a claim against
   the estate of the lessee making an assignment for the benefit of cred-
   itors based on rent accruing subsequent to the conveyance, in the ab-
   sence of anything to show that he reserved the right to collect the rent
   under the lease.
      [Ed. Note.—For other cases, see Assignments for Benefit of Creditors,
   Cent. Dig. §§ 875–880; Dec. Dig. § 298.*]

      Ingraham, P. J., and McLaughlin, J., dissenting.

Appeal from Order Entered on Report of Referee.

In the matter of the assignment of Girard N. Whitney to Bayard L.
Peck for the benefit of creditors. From an order confirming the re-
port of the referee and determining that the claim of Dudley S. Harde
and another was provable against the assigned estate, and that they
were entitled to share in the distribution of the estate, the party ag-
grieved appeals. Affirmed on the opinion of the referee.

The following is the opinion of John L. Wilkie, referee:

On October 20, 1906, Girard N. Whitney leased from Dudley S. Harde
and Herbert S. Harde certain premises in the city of New York for a period
of 4 years and 11 months, commencing November 1, 1906 and ending Sep-
tember 30, 1911. The rent reserved was $3,000 a year, payable in monthly
installments on the 1st day of each month. The lease contained the usual
clause permitting the lessors to re-enter upon the premises in the event of
the tenant's nonpayment of rent, to lease them, and to hold the lessee for
the balance of the rent, but this right was never exercised by the lessors.
On the contrary, the premises have been continually in the possession of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the lessee or his under-tenants under subleases made with the knowledge and consent of the lessors.

In January, 1908, the lessee, Mr. Whitney, made an assignment for the benefit of his creditors to Bayard L. Peck. The assignment was made by him individually and as a member of the copartnership of Whitney & Kitchen, and directed the assignee, after the payment of the expenses of the trust and his commissions, "to pay and discharge in full, if the residue of said proceeds is sufficient for that purpose, all the debts and liabilities now due or to grow due from the said copartnership of Whitney & Kitchen and from the aforesaid party of the first part. * * *" Thereafter the assignee duly qualified and entered upon the discharge of his duties. No rent was unpaid at the time of the assignment; the rent for January, 1908, having been paid by the lessee on or about January 2, 1908. On or about June 22, 1908, the lessors presented to and filed with the assignee a proof of claim against their lessee, the assignor, for rent claimed to be then due and owing for the months of March, April, May, and June, 1908, amounting to $1,000, and for rent which it was claimed would thereafter grow due during the remainder of the term of the lease amounting to $9,750. This claim was rejected by the assignee on or about June 23, 1908. On December 20, 1909, an order was made on the petition of the assignee referring the aforesaid claim to me "as sole referee to hear and determine" and a hearing was had on December 1, 1910, at which testimony was given establishing the following facts:

That no rent was paid for the months of March to September, inclusive, of the year 1908, leaving a balance due for the year ending September 30, 1908, of $1,750; that during the year commencing October 1, 1908, and ending September 30, 1909, the lessors received from the assignor on account of rent the sum of $1,500 only, leaving a balance due for that year of $1,500; that during the year commencing October 1, 1909, and ending September 30, 1910, the lessors received from the assignor on account of rent the sum of $1,500 only, leaving a balance due for that year of $1,500; that the only other payment made to the lessors was a payment of $250 made on or about November 16, 1910; and that on or about November 16, 1910, the lessors, the claimants here, conveyed the premises to some third party, and ceased to be the owners thereof.

Apparently no payment was made on account of the October, 1910, rent amounting to $250, the payment made about November 16, 1910, being applied to November. The rent due and unpaid at the time the claimants ceased to be the owners of the premises was therefore $5,000 and the amount to grow due was $2,625, on account of which $125 has been paid, leaving a balance to grow due of $2,500.

Two questions were presented for determination, viz.: (1) Were the claimants entitled to file and prove a claim against the assigned estate for rent growing due after the assignment; and (2), assuming that they were, should the claimants be allowed to prove their claim to the extent of the rent to grow due after the conveyance of the premises by them? I am of the opinion that the first question should be answered in the affirmative and the second in the negative.

, The assignee's claim is that the unpaid rent accruing after the assignment is not a claim properly allowable by him under the deed of assignment by reason of the fact that he has never elected to treat the lease as an asset and has never by his own act taken any benefit therefrom to himself or the estate. That such is the fact is not disputed by the claimants, but it is their contention that, under the terms of the deed of assignment, the claim made by them is one that is properly allowable by the assignee irrespective of his failure to act, and, as it were, despite the same.

Matter of Link, 14 Daly, 149, decided by the old Court of Common Pleas in 1887, is a case directly supporting the assignee's contention. The language of the deed of assignment there under consideration seems to be identical with the language of the assignment in the present case, and the facts upon which the claim was based are directly analogous. It was held that a claim for the rent accruing subsequently to the assignment was not provable against the assigned estate. There is no discussion in the opinion of the rules of law applicable; the learned court evidently considering itself bound to decide as

it did on the principle stare decisis under the cases of Matter of Risley, 10 Daly, 44; Matter of Adams, 15 Abb. N. C. 61; Matter of May & Berwin, 47 How. Prac. 37; and Johnston v. Merritt, 10 Daly, 308. Its decision seems also to have been actuated largely by the consideration that the lessor was not left without a remedy by a refusal of his claim, having still an action against his lessee for damages for breach of contract.

[1] So far as this latter argument is concerned, it does not seem to me at all applicable. The assignment itself "is to be followed strictly by the assignee in his disposition of the property. It is his guide and furnishes the measure of his duty." Matter of Hevenor, 144 N. Y. 271, 39 N. E. 393. No discretion is vested in him with respect to the distribution of the estate in his hands, and he must follow closely in so doing the terms of the assignment. The question, therefore, as to the propriety of any claim presented to him for allowance, depends solely upon the terms of the assignment, and any arguments as to the general equities of the allowance or rejection of any particular claims would seem to have no bearing. If the claim under consideration is one that is embraced by the assignment, it does not matter, nor does it militate against the claim that the lessor has another remedy against the assignor, such as an action for breach of contract.

The cases cited by the learned justice who wrote the opinion in the Link Case, supra, do not to my mind constitute authorities to the effect claimed for them. In Matter of Risley, 10 Daly, 44, a claim was made by a surety for rent paid by him as guarantor upon a lease subsequent to the assignment which did not provide for the payment or indemnification of persons who subsequently incurred liabilities or made advances for the assignor. The court held the claim to be a debt created after the assignment, and hence not provable. In Matter of Adams, 15 Abb. N. C. 61, it was held simply that a claim for damages against an assignor for his breach of contract occurring after the assignment was not provable against the assigned estate. Matter of May & Berwin, 47 How. Prac. 37, was a case arising under the bankruptcy law of the United States and involving a construction of the bankruptcy act. Johnston v. Merritt, 10 Daly, 308, was in effect an action for rent against an assignee for the benefit of creditors who had entered into possession for the purpose of removing the assignor's property, and who had tendered payment for use and occupation but who denied any obligation under the lease. Despite the foregoing, I should, however, feel constrained to follow the ruling in the Link Case were it not for the fact that it has to my mind been overruled by more recent decisions of both the Appellate Division, First Department, and the Court of Appeals. Matter of Ludeke, 33 App. Div. 397, 54 N. Y. Supp. 121; Matter of Hevenor, 144 N. Y. 271, 39 N. E. 393; People v. St. Nicholas Bank, 151 N. Y. 592, 45 N. E. 1129.

In Matter of Ludeke, decided in 1898, an assignment was made directing the assignee to discharge in full "all the debts and liabilities now due or to grow due." A claim was made under a lease to the assignor for rent to grow due subsequent to the date of the assignment. This claim the assignee compromised by the payment to the claimant of a sum less than the face value of the claim. On an application to confirm the assignee's accounts the assignor objected to this payment and his objection was sustained by the referee in the first instance and by the court at Special Term. On appeal this ruling was reversed by the Appellate Division. While the precise question here involved was not the primary question before the court in that case, nevertheless a decision as to the propriety of the claim for rent "to grow due" was a necessary part of the court's ruling; else how could it have sustained the assignee's action in compromising it? That the matter was considered and ruled upon seems clear from the language of the court when it said: "The assignor's liability under the lease was certainly not a new debt created after the execution of the assignment. The contract and the entire liability of the assignor thereunder existed upon the day when the assignment was delivered. The assignee was directed to pay debts due and to grow due, in other words, sums payable under existing contracts, whether due in præsenti or payable in futuro. So long as the landlord did not avail himself of the option contained in the third paragraph of the lease, he undoubtedly 'had a valid and certain claim against the assigned estate for the rent reserved in the lease."

Matter of Hevenor, 144 N. Y. 271 [39 N. E. 393]." Such language seems to me absolutely irreconcilable with the claim here made by the assignee and must be regarded as overruling the decision in the Link Case.

In Matter of Hevenor, supra, a claim was made for a deficiency in rent under a lease made by the assignor where the lessor acting under a clause in the lease had re-entered upon the demised premises and relet the same at a rent less than that reserved in the original lease. The assignment provided for the payment of "the debts and liabilities of the assignor, then due or to grow due." The claim was rejected. On appeal to the Court of Appeals, the action of the assignee in rejecting the claim was sustained, but only upon the theory that the lessor by re-entering and reletting the premises had put an end to the fixed obligation of the lessee, and the only obligation thereafter was for a possible deficiency which could not have existed at the time of the assignment and consequently was not covered thereby.

The language of the opinion shows clearly, however, that, had the lessor not re-entered and relet the premises, he could have proved his claim for rent "to grow due" under the lease after the assignment.

In People v. St. Nicholas Bank, supra, the same court gave judicial construction to the decision in the Hevenor Case; Judge Gray, who wrote the opinions in both cases, saying, at page 595 of 151 N. Y., at page 1129 of 45 N. E.: "The question was whether the assignee of Hevenor could approve and pay the claim of Hevenor's lessor; and that turned upon the terms of the authority conferred by the deed of assignment. That, undoubtedly, directed the assignee to pay all the debts and liabilities of the assignor then due or to grow due; but, as we endeavored to point out in the opinion, that language did not mean to include a liability thereafter to be created and contingent upon after-occurring events. It meant, and the will of the assignor was, that whatever was a debt at the time of his assignment, or whatever he had rendered himself liable to pay, although the liability had not yet matured into an actual debt, his assignee should meet by the application of the assets in his hands."

It seems clear that the rent to grow due under the lease was something which prior to his assignment the assignor "had rendered himself liable to pay." True, this liability "had not yet matured into an actual debt," but under the foregoing decisions this latter fact is immaterial. Nor may it be said that simply by consenting to the lessee's subletting the premises the lessors have availed themselves of the option to re-enter contained in the lease so as to bring the case within the purview of the rule laid down in the Hevenor Case.

[2] It must be held, therefore, that the claim filed by the lessors on or about June 22, 1908, was a proper one, and that the action of the assignee in rejecting it was unwarranted. Quite obviously the claim as filed should be reduced to the extent of the payments subsequently made. The further question is whether it should be still further reduced as it were to the extent of the rent "to grow due" after November 16, 1910, the date on which the claimants ceased to be the owners of the property.

There is some doubt in my mind as to the exact question referred to me for determination; that is to say, whether I am to decide simply as to the propriety of the assignee's action in rejecting the claim filed with him on or about June 22, 1908, in which event, of course, it would not be incumbent on me to consider the questions just suggested as to the amount of the claim which might be proved, or whether I am to decide further if the claim was improperly rejected, to what extent it should be allowed.

[3] The order of reference provides "that the above-entitled action and the issues herein" be referred to the referee to hear and determine. It seems to me that "the issues herein" embrace not only the question as to the propriety of the rejection, but the further question as to the amount of the claim to be allowed if the rejection was improper. Upon this latter question, the fact of the transfer of ownership seems to have a material bearing, and, as that fact appears in evidence before me, I feel constrained under the order of reference to decide what the legal effect of that fact is.

[4] There seems to be no case in which this precise question was ever raised or passed upon. I can, however, conceive of no rule of law or principle of eq-

uity which would permit these claimants to prove against the assigned estate, as a debt or liability due or to grow due to them, a claim for rent to grow due in futuro under a lease of premises of which they had ceased to be the owners and which they had conveyed to some third party. Had the claimants conveyed the property prior to filing their claim with the assignee, they surely would not have been entitled to prove any claim for rent growing due or to grow due after the date of the conveyance. The ownership or right to make such a claim would rest with the then owners of the property and not with the original lessors, unless perhaps there had been some assignment of the claim to them, which fact does not appear here. It seems equally clear that, although their claim was properly presented and filed in 1908, the claimants should not be permitted to prove such claim to the extent of the rent "to grow due" after their transfer of the property.

It may perhaps be that some arrangement was made at the time of the sale of the property whereby the original lessors were to retain the right to collect or recover rent from the assignor under his lease. Such a situation is somewhat unusual, and the court will not indulge in a presumption that the same exists. There is no evidence as to any limitations or reservations attending the transfer of the property, and, if the court should indulge in any presumption, it is only a presumption that the transfer was of the ordinary kind by virtue of which the vendee or grantee would have the right to collect or recover the rent growing due after the transfer.

I therefore hold that the claim filed with the assignee on or about June 22, 1908, was a proper claim, and that its rejection by the assignee was unwarranted; but I hold, further, that the claim as filed should be reduced to the extent of the payments made on account of rent and the rent to grow due after the conveyance of the property by the claimants. As so reduced, the claim may be proved and the claimants should be permitted to share in the assigned estate to the extent thereof.

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, MILLER, and DOWLING, JJ.

Daniel Burke, for appellant.
Charles F. Brown, for respondents.

PER CURIAM. Order affirmed, with $10 costs and disbursements, upon the opinion of the referee.

INGRAHAM, P. J. (dissenting). The referee found that on October 20, 1906, the claimants leased to Girard N. Whitney an apartment in a residential building on Eighty-Fourth street and Riverside Drive for four years and eleven months, commencing November 1, 1906, at an annual rent of $3,000 per year, payable in equal monthly payments in advance; that Whitney entered into the possession of the said apartment, and from the date of the lease to the date of the trial Whitney had continued in possession of the premises, either in actual possession or under subleases made with the consent of the lessors; that Whitney paid the rent reserved in said lease up to and including the month of January, 1908, but for the balance of the year, ending September 31, 1908, Whitney paid the lessors the sum of $250, leaving unpaid for that time $1,750; that for the year ending September 30, 1909, Whitney paid on account of the said rent the sum of $1,500, leaving $1,500 unpaid; for the year ending September 30, 1910, Whitney paid on account of the rent of the premises the sum of $1,500, leaving $1,500 unpaid; that on the 16th of November, 1910, Whitney paid to the lessee the sum of $250 which was credited on the rent for

the month of October, 1910; that on or about November 16, 1910, the lessors sold and conveyed said premises and ceased to be the owners thereof; and on that date there was due and unpaid to the said claimants upon said lease by Whitney for the rent of said apartment the sum of $5,000; that on January 25, 1908, Whitney made a general assignment for the benefit of his creditors to the defendant Peck, provided that the assignee, after paying the just and reasonable costs of executing the assignment with his lawful commissions, should "pay and discharge in full from the residue of said proceeds, if sufficient for that purpose, all the debts and liabilities now due or to grow due from the said copartnership of Whitney & Kitchen and from the said party of the first part with all interest moneys due or to grow due therefrom; and, if the residue of said proceeds shall not be sufficient to pay the said debts and liabilities and the interest moneys in full, then to apply the said residue of said proceeds to the payment of said debts and liabilities ratably and in proportion." The assignee duly qualified and took possession of the property of Whitney, excepting the apartment, which remained in possession of Whitney. There is no evidence in the case as to the amount of property that came into the hands of the assignee from Whitney's individual estate, nor is the general assignment a part of the record. It appears, however, that on May 6, 1908, the assignee served notice upon the claimants that he did not elect to retain the lease or to regard it as an asset of the estate. After that the landlord allowed Whitney to remain in possession of the lease, consented to Whitney's subletting the apartment, who individually received the proceeds of the sublease. It appeared that the property was thus sublet by Whitney continuously from October 28, 1908, down to the time when the landlord conveyed the property. Whitney actually paid all rent due up to the 1st of March, 1908, and it was the rent accruing after that time during which Whitney himself or his subtenants actually occupied the property for which the claim is made.

It is quite clear that no obligation existed to pay the subsequent accruing rent at the time the assignment was made. The assignment was executed on January 28, 1908, and the rent was actually paid by Whitney personally up to March 1, 1908. The rent that subsequently accrued was for the occupation of the premises by Whitney subsequent to the date of the assignment, and for which, there being no liability at that date, Whitney's property assigned for the benefit of his creditors was responsible. The landlord had under the lease an option of terminating the lease upon Whitney's failing to pay rent, or he had the option of entering into possession of the premises and re-leasing it on Whitney's account which would have established the amount of the contingent liability of Whitney to the landlord, or he could still continue to recognize Whitney as his tenant, allow him to continue in possession of the premises, and hold Whitney liable for the rent as it became due from time to time. He having received notice from the assignee that the assignee would not adopt the lease and take possession of the leasehold premises as a part of the assigned estate, and elected to treat Whitney as a tenant and to hold him liable for the

rent as it became due for the continued occupation of the premises, it seems to me that the landlord must look to Whitney for the payment of his rent, and not to the property assigned for the benefit of debts as they existed at the time of the assignment. The landlords were not creditors of Whitney at the time of the assignment for the amount of the rent that became subsequently due from month to month for the use and occupation of the premises. It is true that Whitney was bound by the lease to pay the rent whether he actually occupied the premises ·or not, and that he had obligated himself to make such payment; but the obligation to pay the rent would cease if the landlord took possession of the premises, and the obligation itself arose only in the future as each payment respectively became due. I assume that at the time of the assignment the landlord had a claim against Whitney for the amount that he had agreed to pay in the future less the value of the use and occupation of the premises from the time of the assignment to the termination of the lease, or, in other words, for the damages that the landlord would have sustained by a breach of the contract of leasing;. but the landlord could not allow the assignor to occupy the ·premises and receive the benefit from such occupation or such subletting, and at.the same time hold the assigned estate for the full amount ·of the rent that was agreed to be paid for the future occupation of the premises. It is said, however, that the assignee is bound by the terms of the assignment, and, as this assignment directed the assignee to pay all debts and liabilities now due or to grow due from Whitney, the assignee is required to pay these subsequent rents as they from time to time accrue; but it is the indebtedness of the assignor existing at the date of the assignment which the assignee is required to pay, the then existing debts, whether due at the time of the assignment, or to grow due thereafter. The question is, What indebtedness existed from the assignor to the landlord on the 28th day of January, 1908, when the assignment was made? It seems to me clear that that existing indebtedness was an amount of rent which was then due and payable, or the difference between the rent that Whitney was to pay for ·the balance of the term and the value of the use and occupation of the ·premises for such period; and it is not the amount of the subsequently accruing rent for the use and occupation of the premises subsequent ·to the time that the assignment was made.

The cases of Matter of Ludeke, 33 App. Div. 397, 54 N. Y. Supp. 121; Matter of Hevenor, 144 N. Y. 271, 39 N. E. 393, and People v. St. Nicholas Bank, 151 N. Y. 592, 45 N. E. 1129, were relied on by the referee. In Matter of Ludeke there was a claim by a landlord for an .amount that had been agreed to by the assignment in full settlement ·of the claim against the assignor and the assigned estate and which had been paid by the assignee, and this court held that amount be allowed to the assignee on a settlement of his accounts. The question here as to whether the assignee would have been bound to pay to the landlord the subsequently accruing rent during the whole term of the lease, he allowing the assignors to occupy the premises when no advantage from such occupation would come to the estate was not directly presented. In Matter of Hevenor, Hevenor made an assign-

ment for the benefit of his creditors, the assignment containing a provision substantially the same as the one now under consideration; but in that case the lessors entered into possession of the premises, relet them to different persons by virtue of a provision in the lease similar to that in the lease in question, and then claimed as against the assignor to recover the difference between the amount which he had recovered from the subsequent lessees of the premises and the amount that the assignor was bound to pay for the lease. Judge Gray, in discussing the situation that existed, said:

"Under such circumstances, what claim these appellants could have against the assignor, or his assigned estate, must be uncertain and contingent. It could not be regarded as one of the debts, or liabilities, contemplated to be paid, under the deed of assignment. That instrument is to be followed strictly by the assignee in his disposition of the property. * * * They (the claimants) infer from the use of the word 'liabilities,' in the clause in question, that the assignor intended that his assignee should pay all liabilities which might grow due, without regard to the question of when, or how they arose, provided they were possibilities under his contractual relations with others. This contention naturally assumes that the word 'liabilities' as used in the assignment imports an element which makes the assignment more elastic in its comprehension of the obligations to be included therein. We think that the General Term was right in holding that the words 'debts' and 'liabilities' were synonymously used, and that the assignor could not have intended that liabilities thereafter to be created by the acts of the lessors in the lease, should be paid by the assignee. * * * No inference can be drawn from this deed of assignment, which contradicts the rules of law, and the liabilities, which the assignee was required to pay, were only those which could be ascertained, or fixed, at the time when the assignment was made, although the liability might not mature into an actual debt until the lapse of some time after the making of the assignment."

In this case, the obligation to pay the rent was created by the lease that existed when the assignment was made. The act of the lessor in taking possession of the premises and renting them for the benefit of the lessee simply reduced the liability which the lessor was under to pay the rent. Certainly if the assigned estate was not liable for the reduced amount, or the amount that the lessor agreed to pay as tenant, less the amount that the lessor had collected from subletting the premises, the assignee could not be compelled to pay the whole amount that the lessee had agreed to pay for the premises when the assignor himself had occupied the premises and received for his own use the proceeds derived from them. In People v. St. Nicholas Bank, supra, there was a claim against the receiver of an insolvent corporation for rent to accrue for an unexpired term at the date of the appointment of the receiver. In that case the Hevenor Case was distinguished, and, after discussing the authorities, the court said:

"It should be clear, as we think, that no discretion is vested in an assignee with respect to the distribution of the estate in his hands, and that he must follow closely in doing so the terms of the assignment. There should be no construction of its provisions which would permit the delaying of creditors. The presentation and allowance of a claim by Hevenor's lessor for a certain sum, as due from the lessee upon the cessation of occupation under the lease, would have been unobjectionable as a debt or liability of the assignor, and would in no wise have tended to delay the distribution of the assigned estate among the creditors. The liability of the assignor was fixed at the time of the re-entry by the lessor, and would have consisted in an indebtedness stated by

the lessor, either as the whole amount of rent to accrue during the unexpired term of the lease, or as such lesser amount as would represent the difference between the whole amount of the rent thereafter to accrue and the amount of rent reserved in a reletting of the premises for the unexpired term."

The court then discussed the question as to a claim against the receiver of an insolvent corporation, and held that the situation of a receiver was different from that of an assignee for the benefit of creditors. Considering what was decided in these two cases, it seems to me that the referee has entirely misapprehended the effect of the decisions, and has allowed just what the Court of Appeals has said could not be allowed; that is, the claim presented by a lessor for the rent subsequently accruing, less the amount that the assignor and lessee had paid on account of the rent. The situation is in no sense different from that in the Hevenor Case, except that in this case the landlord allowed the lessee to remain in possession and collect the rents and pay what he pleased to the landlord; while in the Hevenor Case the lessor entered into possession of the premises and appropriated all the rents that he could collect to the diminution of the claim. Undoubtedly, as before stated, the lessor in this case could have presented a claim for the difference between the value of the use and occupation of the premises during the remainder of the term and the rent that the assignor was to pay; but he could not claim to be entitled to all of the rent payable under the lease for the use and occupation of the premises without making any allowance for the value of the use and occupation during the balance of the time.

It seems to me, therefore, that under the authorities relied upon by the referee and the principle there established the claim cannot be sustained.

The order appealed from should, therefore, be reversed, with $10 costs and disbursements, the motion to confirm the referee's report denied, and the claim rejected.

McLAUGHLIN, J., concurs.