Comstock, Oh. J.
 

 Mrs. Coe, by virtue of her husband’s will, had a life estate in the premises, out of which the rents in question accrued, and the plaintiffs owned the remainder in fee. She died April 5, 1855, the léases being then unexpired. On the 1st of May following, the rents became due for the preceding quarter of a" year. The defendant is the executor and residuary legatee of Mrs. Coe, and' having collected the rents for the whole, quarter, the principal question in the case is, whether he is entitled to apportion them by dividing the quar
 
 *282
 
 ter into two periods of time, one before and the other after her death, and by retaining in his own hands the portion which accrued before that event.
 

 As rent follows the reversionary estate, the law allows it to be apportioned where that estate becomes divided amongst different owners. This is according to the maxim, “
 
 accessarium sequitur naturam, sui
 
 principalis.” Thus if a reversion descend on the death of the ancestor who gave the lease, and the coparceners or heirs malee a- partition, the rent will be apportioned in favor of each of them. So if the reversion be severed by will or even by conveyance of the owner, the same result will take" place. (2 Platt on Leases, 131, 132, and cases cited.) But the same reasons never existed for apportioning rent on the,,principle of time where the tenant was bound to pay it at stated periods. The sum accruing "between each of the times of payment was a single entire debt, and was due only on the condition precedent of the tenant being entitled- to enjoy the' premises for the time in respect to which it was payable. If, therefore, a person having a life estate, with no power to make a lease to continue longer than during his life, should make a lease for years reserving rent half yearly, and should die in the middle of a half year, the rent, according to the principles of the common law, would be lost for the half of a year. The' executor or representative of the lessor could not recover it because by the nature of the contract the lessor was not entitled to it except in the sums and at the times specified in the lease. His successor in the reversionary estate could not claim it for the additional reason that the reversion was not his until the lease itself was terminated by the death of the life tenant who gave it. If the lessee continues to hold afterwards, such holding is necessarily under some new contract with the party on whom the estate has devolved. (Woodfall’s Land. and Ten., 248; 1 Salk., 65; 1 P. Wm., 392; 2 Id., 501, 502; 1 Man. & Gr., 589, 13 N. H., 343 ; 11 Mass., 493.)
 

 If, however, the lease continues, although intermediate the days of payment the reversion passes wholly into new hands, the obligation of the lessee to pay rent continues also. Thus
 
 *283
 
 in the middle of a quarter the lessor may convey the whole estate which is under the lease, or it may be sold under execution or mortgage, or he may die leaving it to descend to his heirs, or he may dispose of it by will. The lease itself is unaffected by these events, and the rent is therefore payable as though they did not occur; but it is payable only in the sums and at times specified in the demise. The reversion may be transmitted to a new owner during a period between the days of payment, but such an event does not divide the obligation of the tenant. The accruing rent follows the reversion wheresoever that goes, and neither the former owner nor his representative can recover any portion of it. Being recoverable only in a single sum and not until the prescribed day of payment, the common law gives it to him who is the reversioner at that time, and no case can be found where a court of equity has adopted a different rule. Says Mr. Woodfall (Law of Landlord and Tenant, 248),
 
 “
 
 at common law rent cannot be apportioned, but the reversioner becomes entitled to the accruing rent from the rent day antecedent to the decease of the tenant for life, whose representative was entitled to the arrearages due at some rent day before the death of the testator, or the intestate; for the law does not apportion rent in point of time nor does equity.” (See also 2 Greenleaf’s Cruise, p. 116, §§ 44, 45, 46,
 
 Ex parte,
 
 Smyth, 1 Swanst., 337, and note, and other cases cited,
 
 supra,)
 
 It is true there are in the English books some cases of a peculiar kind, where on the death of a tenant for life before the day of paying rent for the current quarter or other period, the rent has been divided between his representative and the remainderman; but these are all cases in which the lease terminated on the decease of the life tenant; either because he had no power to lease so as to affect the remainderman, or because if such a power was given to him it had been defectively executed, and the lessee, holding the premises until the rent day, voluntarily paid the whole to the person who succeeded to the estate. In all the cases of this kind the lessee was not at common law bound to pay at all for so much of the time since the last rent day, as had elapsed
 
 *284
 
 before the death of the tenant for life, but having conscientiously paid for the whole time, the person who took the estate in remainder was held by the courts of equity to have received for the use of the executor, of his life tenant, so much of the rent as accrued beyond his decease.
 
 (Ex
 
 parte,
 
 Smyth, supra; Paget
 
 v.
 
 Gee,
 
 1 Ambler, 199.) In these instances the rent actually paid was apportioned or divided on the principle of time; but cases of this kind have no tendency to show that such an apportionment can be made when the lease remains as before, notwithstanding a change of parties entitled to the rents takes place intermediate the rent days. The lessee in that case is bound to pay for the whole time, and the reversioner, or remainder-man, takes the rent as an entire sum due to him by the terms of the contract.
 

 The well ascertained rules of the common law are, therefore, opposed to the claim of the defendant to retain any portion of the rents received by him for the quarter during which his testator, the life tenant, died. The leases were not determined by that event,- and the plaintiffs, who as remaindermen succeeded to the reversion, were entitled to the whole of those rents. It has also been observed that the courts of equity have never* departed from the rule of law on this subject.
 

 It seems hardly necessary to say now that there is no legislation of this State which the defendant can invoke in support of his claim. In England, one of the rules of law in regard to apportionment of rent was abrogated by an act of Parliament, passed in the reign of George II. That statute (2 Geo. II, c. 19), after noticing that by the existing rule rents were frequently lost, where a lessor having only a life estate died before or on the day when it would be payable, declared that when any tenant for life should happen so to die, his executor or administrator might recover the whole rent in arrear, in case such death took place on the day fixed for payment, or if it happened before that day, then a proportion, according to time, making all just allowances, &c. That legislation, with some change in phraseology, has been followed in this State. Our statute (1 R. L., 438; 1 R. S., 747, § 22) provides that when a ten
 
 *285
 
 ant for life, who shall have demised lands, shall die before the day when any rent is to become due, his executors may recover “the proportion of rent which a'ccrued before his death.” In the case provided for, therefore, rent can be apportioned in opposition to the rule of the common law, and a recovery had, where, but for the statute, the rent would be lost. But the statute does not include the present case. The leases in question were not given by a tenant for life, but by the owner of the fee, and the disputed rent was not liable to be lost, because the plaintiffs, succeeding to the reversion, could recover the whole of it by action founded on the very leases themselves. The English statute, like ours, was enacted to remedy the apparent injustice of the rule which absolved a lessee from paying any rent, where his interest was determined between the rent days by the expiration of a life estate on which the lease depended. More recent legislation in England has gone still further. The statute of 4 W. IV, c. 22, after reciting that by law rents due at fixed periods were not apportionable, and after reciting the inconvenience of that rule, proceeds to declare that all rents made payable at such periods under any instrument executed after the passing of the act, should be apportioned so that on the termination, by death or any other means, of the estate of the person entitled to the rents, such person, or his representative, should have a portion of such rents, according to the time elapsed since the last period of payment. By a further provision, the entire rent is to be received and recovered from the tenant, by the person who would be entitled to recover it if the act had not been passed, and is to be held by him subject to apportionment, which can be enforced against him by suit at law, or in equity. It will be seen that this statute recognizes the old rule, whilé it declares a new one for future leases, and that it also carefully protects the tenant against more than one action for the entire rent. We have no such legislation in this State. If we should adopt the principle of that statute, in regard to apportionment, without legislative interference, we should not only change the existing law, but the change must be made without the protection to tenants which the English
 
 *286
 
 statute secures. If we declare rent to be apportionable in cases like the present, it will follow, according to our rules of pleading and practice, that each party entitled to a share may sue the tenant to recover it. To illustrate, if the defendant has no interest in the rents now in question, then he cannot retain the portion in his hands. If' he has an interest, then to that extent he could, under our practice, recover so much as belonged to him, by suit against the tenants, if they had not paid these rents. And I think that even a notice to the tenants of his claim to a share, would take away from them their right to pay the entire sum to the persons who, as remaindermen, would be entitled to the other share. To conclude on this point, we find that the rule of law denying apportionment in a case like this, has never been shaken; and whatever may be the arguments, founded in justice or expediency, in favor of a different rule, we think those arguments should be addressed to the legislature, rather than to the courts.
 

 - The life estate and the remainder in fee, between which the apportionment is claimed, were created by the will of Mr. Coe, by whom the leases were given, and it has been insisted that we ought to construe the will favorably to his widow, and on that ground allow the apportionment to take place. But we see no room for any construction which will take the case out of the general rule of law. Of course the life estate given was intended by the testator as a part, and perhaps the principal part of the provision made for his widow, but it was given simply as a life estate, with remainder over to the plaintiffs; and it does not appear even to have been in lieu of dower in any other real estate which he may have owned. The widow became entitled to the rents as incident to her life estate in the reversion; but as that estate terminated between the periods for payment, the rent accruing, but not yet due, became at once annexed to the estate of those who succeeded her in such reversion. Ho part of it could be severed at that point of time. To make an exception in such a case, to the general rule, would be virtually to deny the existence of the rule altogether. It may be well to observe that rents are unlike annuities, and un
 
 *287
 
 like the interest of money. They issue out of land, and are a part of the land. They are less capable of division, or apportionment, according to a precise measure of time, because the value of the tenant’s enjoyment may be quite different at different periods of the year, and the value, moreover, may very much depend on the enjoyment for- the full time specified in the lease.
 

 . It was also claimed in the argument, that an amicable apportionment of the rents in question was made between the defendant and the other parties interested—they allowing him to retain, without objection, such portion as accrued before the death of Mrs. Coe—and that this arrangement ought to be held conclusive; but we think that nothing was done having any legal significance. If the plaintiffs had collected the rents from the tenants, and then, under a mistake of the law, had voluntarily paid to the defendant the share which he claimed, it is quite likely they could not recover the money back. But such are not the facts. The defendant appointed an agent who collected the entire .rents of the quarter for him, and he then divided them according to time, and paid over to the plaintiffs so much as accrued after the death of the tenant for life. The most that can be said is that they received so much of the fund, without claiming, at the time, any more. I do not doubt that all the parties misapprehended the rule of law on the subject, but I see nothing in the facts which extinguished the right of the plaintiffs to the whole rent. Their right of action against the defendant arose when he received the whole, and nothing afterwards happened which impaired that right; their acceptance of a portion of the. sum which belonged to them, without making further claim at the time, clearly could have no such effect.
 

 The remaining question is, whether, the plaintiffs can maintain the action jointly? We are of opinion that they can. If the rents had not been collected from the .tenants, the plaintiffs, to whom it belonged, as tenants in common of the reversion, might have joined in an action to recover, it. This rule appears to be extremely well settled; the only doubt suggested by the
 
 *288
 
 authorities being, whether they could sever in their suits, if they had elected to do so.
 
 (Sherman
 
 v. Ballou, 8 Cow., 304;
 
 Decker
 
 v.
 
 Livingston,
 
 15 Johns., 482;
 
 Decharms
 
 v.
 
 Horwood,
 
 10 Bing., 526;
 
 Martin
 
 v. Crompe, 1 Ld. Raymond, 350;
 
 Hill
 
 v.
 
 Gibbs,
 
 5 Hill, 56.) These authorities will also show that the plaintiffs, having the same common interest in the money which the defendant received, as rent which belonged to them, can unite in their action to recover it out of his hands; and this we think is also clear on principle. We are, therefore, of opinion that the judgment must be affirmed.
 

 Denio, Selden, Weight and Welles, Js., concurred.