## APPORTIONMENT OF RENTS ACCRUING DURING TRANSFER OF PROPERTY.

Superior Court of Cincinnati.

RICHARD H. WALD AND FREDERICK FORCHHEIMER v. F. A. BIEN,

Decided, April 9, 1913.

*Rents—Accruing for Property Under Contract of Sale—Go to Grantor up to Date of Conveyance, When—Apportionment of Rents and Charges for Interest Where Delay Occurs in Making Transfer— As to Default of Tender of Performance Where Transfer is to be Made After Title Has Been Examined—Custom—Specific Performance.*

1. Upon the sale and conveyance of a reversion in land, in the absence of stipulation to the contrary, the vendor remains owner of all rents that have accrued before conveyance and the purchaser becomes owner of all rents that accrue thereafter. Rent is not apportioned as to time.

2. The same rule applies where a tenement house, rented out by oral leases to a number of tenants, is sold and conveyed between rent days.

3. Where there has been delay in carrying out a sale of a reversion in land, and the vendor remains in possession, ordinarily the vendor must account for the rents accruing from the day when the contract should have been carried out, and the purchaser pay interest on the purchase money from the same date. If, however, the delay is caused by the vendor, and the interest exceeds the rents, the purchaser will be released from payment of interest and the vendor may keep the rents.

4. Where a sale of land is stipulated to be carried out "as soon as" the title has been examined and approved, a party is not in default if he tender performance *within a reasonable time* after such title has been approved.

5. A custom, in order to be engrafted upon a written contract, must be shown to be certain, uniform, reasonable, and so generally known and publicly acquiesced in that the parties to the contract should have known of it.

6. A court of equity may refuse to decree the specific performance of a contract, even though the legal obligation to the plaintiff be perfect, unless the latter submits to such conditions as the court finds equitable under the circumstances of the case.

*Charles B. Wilby* and *L. L. Forchheimer,* for plaintiffs.
*Frank H. Kunkel,* contra.

PUGH, J.

On October 12th, 1912, the plaintiffs, Richard H. Wald and Frederick Forchheimer, were owners in common of a certain tenement house in the city of Cincinnati, which was rented out in apartments, from month to month, to some twenty or more tenants. Some of the tenants paid their rents in advance and some at the end of the month. None of them had written leases.

The defendant, under the name of J. Bokmann, on October 12th, 1912, made an offer to buy the property. This was declined, but a counter-proposition to sell or lease the premises to said Bokmann, on certain terms and conditions, was made by the plaintiffs some days later. This proposition was contained in a letter of October 18th, 1912, and was an offer in the alternative, either to sell for $26,000 cash, or to lease for ten years, the lessee to pay $6,000 cash and an annual rent of 5% on $20,000, and to have an option of purchase, during the term, for said last named sum. On the same day, the offer to lease was accepted with certain amendments. The offer and acceptance are both in writing, signed by all parties, and are set out in full in the pleadings.

It is agreed that Julia Bokmann was a mere figurehead, and that the defendant, F. A. Bien, was and is the only real party in interest. This action is brought by plaintiffs against F. A. Bien for specific performance, and the latter, by cross-petition, seeks specific performance from the plaintiffs. Julia Bokmann is not a party to the case. It is unnecessary, therefore, to pass upon the issue whether, prior to November 9th, 1912, the plaintiffs knew the defendant was the real party in interest.

At the time of the execution of the contract the defendant, in accordance with its terms, paid the plaintiffs the sum of $500 as earnest money—the amount to be credited on the $6,000 payment to become due from the defendant on conveyance to him of the premises.

On November 9th, 1912, the plaintiffs tendered a lease in triplicate, drawn in conformity to the contract, and the defendant tendered $6,000 less $500 already paid as earnest money

and less, also, a certain sum retained by agreement on account of taxes. The mutual tenders were properly made and, except as to the matter of time which is in dispute, were in strict conformity to the agreement. The defendant then stated, in substance, that it was understood that the rents would be apportioned between the parties from November 9th, 1912. As some of the tenants paid in advance on November 1st, for the entire month, his claim was that such portion of the rents already accrued as covered the first nine days of the month should be retained by the plaintiffs, and that such portion as covered the remainder of the month should be accounted for to him, and that, as to rents payable at the end of the month, he would account to the plaintiffs for such portion as covered the first nine days of the month and retain the remainder. The plaintiffs refused this proposition and the deal fell through.

The plaintiffs bring this action for a specific performance of the contract, claiming the right to retain all rents that accrued prior to November 9th, 1912, and offering to account for all rents that accrued thereafter. The defendant, by way of cross-petition, asks also for a specific performance, the rents to be apportioned as to time from November 9th, 1912.

The written acceptance of October 18th, 1912, provides specifically for the apportionment of taxes but says nothing whatever as to the rents.

The defendant examined the premises before entering into contract. He knew the property was a tenement house, and it is proved that he was informed as to the average monthly rental. He says that he did not know how many tenants there were, nor what each paid, nor whether they paid in advance or not, but that he walked through the halls, counted the rooms and calculated what rent the house could be made to produce. These statements have not been disproved, nor does there appear any reason to doubt them.

I. The plaintiffs base their claim to specific performance on the contract, as it appears on its face, and appeal to the rule that, in the absence of express stipulation, there can be no apportionment of rent as to time.

The law certainly is that in the absence of agreement to the contrary, rents belong to whoever is owner of the reversion at

the time they accrue, without reference to whether they are payable in advance or not. The rule is thus stated, *I Tiffany on Landlord and Tenant,* Section 176:

"Rent is not, at common law, regarded as accruing from day to day as interest does, but it is only upon the day fixed for payment that any part of it becomes due. The result of this principle is that, ordinarily, the person who is on that day the owner of the reversion is entitled to the entire installment of rent due on that day, though he may have been the owner of the reversion or rent but a part of the time which has elapsed since the last rent day. Conversely, one who has been owner of the reversion or the rent during a part of such period can claim no portion of the installment unless he is such owner at the time at which the installment is payable by the terms of the lease. The general rule in this regard is ordinarily expressed by saying that rent can not be apportioned as to time."

The decisions in Ohio on this subject are not very satisfactory, *In re Sturgis and Rehm,* 8 N.P.(N.S.), 486, is the nearest in point, and it was there held that rent falling due and paid in advance to a life tenant, who dies before next rent day, should be apportioned as to time between his estate and the remainderman. No authorities are cited for this ruling and, as reported, the decision is contrary to the almost unanimous opinion elsewhere. It is not impossible that circumstances appeared in the testimony which warranted the decision, but they do not appear in the reported opinion. In the case of *Capelle* v. *Wieman,* 9 C.C.(N.S.), 412, it was decided that, when a life tenant dies between rent days, neither the remainderman nor the executor of deceased's estate could recover rent from the tenant for the rental period during which the life tenant died. This is old common law and has never been changed in Ohio. The rule is peculiar to life tenancies and has been changed in England and some states by statute. Hence, where, in such case, the rent had been apportioned between the parties, the remainderman, though owner of the reversion when the rent accrued, could not recover from the executor the amount received by the latter. The circuit court did say in that case that the apportionment was just and equitable. But it had been done by the parties themselves —not by order of court, and the decision rests on the ground

that, though the defendant had no right to the rent, neither had the plaintiff.

The great weight of authority, outside of this state, is contrary to the defendant's contention. The cases of *Whittaker* v. *Gee*, 61 Texas, 217; *Dexter* v. *Philips*, 121 Mass., 178, and *Condit* v. *Neighbor*, 13 N. J. L., 83, decide the same question as was involved in *In re Sturgis and Rehm, supra*, and are contrary to it.

It is true, as claimed, that the rents in question here are those of tenants holding from month to month and not of lessees holding under formal written leases. But the tenancies in this case, so far as the principle under consideration is concerned, were oral, monthly leases. The rule that applies in the one case applies in the other.

Counsel are in error in their statement that the cases which decide that rent can not be apportioned as to time do not apply to the lessor and lessee of a reversion where the latter is given an option of purchase, but only to vendor and purchaser. In the cause at bar, however, the transaction was a sale, not a lease. The purchaser was to pay $26,000 for the premises, $6,000 in cash and the remaining $20,000 within ten years, and he was to pay 5% interest on the deferred installment. As security, the vendors were to retain title until payment was made in full, and the purchaser was to pay taxes. Instead of putting the transaction into the usual form of a conveyance, with a mortgage on the premises to secure the unpaid purchase money, it was put into the shape of a lease with the privilege of purchase, and the 5% interest was called rent. The parties themselves, in the written amendment, call the transaction a *sale*. From the testimony and what was said in argument, there is reason to infer that the deal took this form for the purpose of avoiding payment of taxes on the deferred payment.

In view of the overwhelming weight of authority elsewhere, the court is unable to follow the rule of apportionment laid down in the case of *In re Sturgis and Rehm*, as reported in 8 N.P.(N. S.), 486. See *Kimball* v. *Pike*, 19 N. H., 419; *Hearne, Admr.*, v. *Lewis*, 78 Texas, 276; *Van Wicklen* v. *Paulson*, 11 Barb., 654 (N. Y.); *Demarest* v. *Willard*, 8 Cowen, 206 (N. Y.); *Marshall*

v. *Moselcy*, 21 N. Y., 280; *Peck* v. *Northrop*, 17 Conn., 217; *Stout* v. *Kean*, 3 Harrington, 62 (Del.); *Abbott* v. *Hansen*, 24 N. J. L., 493; *Hansen* v. *Prince*, 45 Mich., 519; *Welch* v. *Horton*, 73 Iowa, 250; *W. S. Mills Co.* v. *Edwards*, 24 Oreg., 475; *Dixon* v. *Nicolls*, 39 Ill., 372; *Kennedy* v. *Kennedy*, 68 Ill., 90; *Leonard* v. *Burgess*, 16 Wis., 41; *Gibbons* v. *Dillingham*, 10 Ark., 9; *English* v. *Key*, 39 Ala., 113; *Ins. Co.* v. *Oliver*, 78 Ala., 158; *Burden* v. *Thayer*, 3 Met., 76 (Mass.); *Stone* v. *Knight*, 23 Pick., 95 (Mass.); *Nicholson* v. *Munigle*, 6 Allen, 215 (Mass.); *Emmes* v. *Feeley*, 132 Mass., 346; *Hammond* v. *Thompson*, 168 Mass., 531; *Butl* v. *Ellett*, 19 Wallace, 544; *Bank* v. *Wise*, 3 Watts, 394 (Pa.); *Kneeland Ins. Co.* v. *Aldrich*, 116 Pac., 260 (Wash.); *Allen* v. *Hall*, 66 Neb., 84; *Gale* v. *Edwards*, 52 Me., 363; *Damren* v. *Light & Power Co.*, 91 Me., 334; *Wilcoxon* v. *Donelly*, 90 N. Car., 245; *2 Taylor's Landlord and Tenant*, Section 389; *1 Underhill on Landlord and Tenant*, 538, 539; *1 Washburn on Real Property*, Section 700.

II.   The defendant also claims that there exists in this vicinity a custom to apportion rent as to time in the manner claimed by the defendant, when a reversion is sold or transferred to a purchaser between rent days.   As the testimony shows, it was upon this ground that the defendant claimed an apportionment on November 9th, 1912, when the deal fell through.

The court does not deem it necessary to enquire as to how far, if at all, such a custom could be permitted to be substituted for a well established rule of law, as it does not find any such custom proved.   Neither is it necessary to discuss the question of pleading.   If provable at all, a custom like this may be shown by parol evidence without specially pleading it.   *Lowe* v. *Lehman*, 15 Ohio St., 179, 183.

The court can not undertake to analyze the testimony in detail as to the issues involved and limits itself to findings of ultimate facts.   The matter of annexing a custom to a written contract must be proved by the party setting it up—in this case the defendant.

Such custom must be proven to be "certain, uniform and generally acquiesced in" (*Lowe* v. *Lehman*, 15 Ohio St., 179,

Syl.); "being of this nature, the legal presumption at once ob-tains that the contract was made in reference to it, because it is in the nature of a law.   But to give it this force, notoriety, uniformity, reasonableness and public acquiescence in it, are requisite" (*Steamer Albatross* v. *Wayne,* 16 Ohio, 513, 517); and, "such custom must be shown to be long continued, without interruption, acquiesced in, reasonable and certain, so that the presumption arises that it was known to the parties to be affected thereby; but it is not in all cases necessary that it be known to a party, where the custom claimed, though only of recent date, is so general and universal and so commonly known and acted upon, as to shut out the right to plead ignorance of its existence. A party has no right to shut his eyes to what is universally known in his community by others" (*Oil Co.* v. *McCrary,* 14 Ohio C. C., 304, 305, syl.).   And see *Risser Co.* v. *Hesser & Milton,* 6 N.P.(N.S.), 431, where the same rule is stated by Hoffheimer, J., of this court.

In this case three real estate brokers, Roedter, Fritsch and Schottenfels, testified to the existence of the custom, though two of them later qualified their statements as to its universality. This evidence is corroborated by that of the defendant, himself a real estate broker, and of his attorney, Henry G. Hauck.   On the other hand, C. B. Wilby, attorney for plaintiffs, testified he had never heard of such a custom, and Harrison, who has handled real estate in Cincinnati for twenty-five years, knew nothing of it.   It is not claimed that plaintiffs knew of such custom, and it is evident that, in many, if not most sales of reversions, the matter is provided for by express stipulation in the contract of sale.

There is not sufficient proof to establish the custom.   The law, long continuing and well established, imposes a certain legal effect as to rents in contracts of this kind.   A custom must be shown to be so notorious as to be at least reasonably certain to come to the knowledge of all who sell or buy real estate—not only real estate brokers and lawyers—and that "the public has acquiesced in it," before it can be engrafted on a written contract and change its legal import.

III.   The counter proposition made by the plaintiffs, October 18th, 1912, contained this clause:

"In case of sale for cash, the payment to be made within twenty days from the date of the contract, which is to be allowed for the examination of the title. In case of lease, the cash payment is to be made within the same time, the lease to be dated as of the date of the cash payment."

In the written amendment, which was accepted and became part of the contract, the above clause was altered so as to read thus:

"The provision in the agreement allowing twenty days for the examination of the title is eliminated, and it is agreed that the sale shall be closed as soon as the abstract company has completed and approved the title."

This change was made at the instance of the defendant, who explained that he had the money to make payment lying idle in bank and was unwilling to bind himself to any stipulation which might occasion delay.

The defendant claims that the sale should have been completely carried out before November 1st, 1912, and that the plaintiffs, through their own fault, caused delay so that they were not ready to tender conveyance until November 9th. As stated, some of the tenants paid their monthly rents in advance, and some of these rents were payable November 1st. So that the defendant claims if the contract had been carried out as it would have been but for plaintiffs' delay, he would have been owner of the reversion on November 1st, and entitled to the rents accruing on that day. The defendant invokes the rule in equity which provides that, in case of sale of real property, where the conveyance of the land and payment of the purchase money are stipulated to be made at a certain time, and there occurs delay which prevents the contract being carried out at the time named, and the vendor retains possession of the premises, the vendee is entitled to the rents of the property from the time the conveyance should have been made, and must pay interest on the purchase money from such date. This is merely an equitable method of placing the parties in the position they would have occupied if the delay had not occurred, and is familiar practice in equity. See, *Fry on Spec. Performance,* Section 1402 (5th Ed.); *Pom-*

*eroy on Spec. Performance,* Section 429; *I Warvelle on Vendors,* Section 180; *Baxter* v. *Brand,* 6 Dana, 298 (Ky.).

In the consideration of this claim it is essential to first determine what was the day or time fixed for the completion of this contract. In the written agreement it was stipulated "that the sale shall be closed as soon as the Abstract Company had completed and approved the title." This means that the lease shall be tendered and the consideration paid within a reasonable time after the report is received. What constitutes a reasonable time varies with and is determined by the special circumstances of each case, and is a question of fact, not of law.

There were three principal parties concerned in this transaction, two lessors and a lessee, or, more properly, two vendors and a purchaser. The lease had to be drawn and executed in triplicate. Both vendors were married and their wives had to be consulted with reference to the execution of covenants for the release of their expectancies of dower. While the terms of the sale had been fixed by the written contract, the form of the lease and language to be employed in it remained to be settled. The testimony illustrates the little delays that occurred. Thus when Mr. Hauck, attorney for defendant, received the report on October 28th, 1912, some uncertainty arose as to the "dimensions of the lot," and this necessitated a visit by him to the Recorder's office on the 29th, and, hence he was unable to advise plaintiffs' attorneys of the receipt of the report beefore October 30th. Also, there was difference of opinion between counsel as to the proper method of reciting in the lease the $20,000 option of purchase. One of them testifies that this difference was entirely settled before the report came in, while the other says it occurred after and occasioned some delay. The defendant himself took part in this discussion and furnished a copy of a lease from his office files as a precedent sustaining his contention. Further, one of the vendors, in signing the lease, wrote only the initial letter of his first name, thus "F." instead of signing "Frederick" in full, and there was delay again on this account.

Every lawyer knows that small delays of this kind occur in almost every transaction where several persons are concerned and large sums of money involved. In this case they are of sig-

nificance only as bearing on the question of reasonable time. The drafting and execution of a simple lease should not, ordinarily, take more than one or two days, but, under the circumstances shown in this case, the court can not say that five or six days constitute an unreasonable time.

It must be observed that, unless the lease was drawn up, executed and delivered within three days after October 28th, 1912, the lessee would not be entitled to the rents accruing November 1st. It has already been decided that the rent can not be apportioned as to time. It follows that, however much delay there might have been after the expiration of these three days, it could in nowise affect the purchaser of the reversion, so far as the rents were concerned, unless the closing up of the deal was protracted beyond next rent day. It does not appear that any rents accrued between the first and the ninth of November. Hence, if defendant had accepted the tender of the lease on the last mentioned day, he would have been no worse off in this respect than if he had received it any time after the first of the month.

Now, if we apply the rule of equity above stated to this state of facts, and thereby award the defendant all rents that accrued from the time when he should have received his conveyance, he would get exactly the rents, neither more nor less, that he refused to accept when he declined to take the lease on November 9th. The Court, under the findings herein made, might decree a specific performance, as of November 2d or 3d, and allow him a rebate from the purchase money equal to all rents accruing after that day. As there were no such rents, there would be no rebate.

Another equitable rule has been invoked in this connection, namely: that where, in a sale of a reversion, a day has been fixed for conveyance and payment of the purchase money, and there has been delay in making conveyance through the fault of the vendor, the latter retaining possession of the premises, the purchaser, if ready and able to perform his part of the contract, if the rents exceed the interest, may elect to take the rents and himself pay the vendor interest on the purchase money. This, also, is familiar doctrine in equity. See, *Fry on Spec. Perform-*

*ance,* Section 1404; *King* v. *Ruckman,* 24 N. J. Eq., 556; *Davis* v. *Parker,* 96 Mass., 94; *Bostwick* v. *Beech,* 103 N. Y., 414; *Hibbard* v. *Smith,* 17 B. Monroe, 52 (Ky.); *Crockett* v. *Gray,* 39 Kan., 659; *Marx* v. *Oliver,* 246 Ill., 316.

But, as we have already seen, there were no rents accruing after the time of performance, except those due after November 9th, 1912, and these the plaintiffs offer to account for. Furthermore, without going into detail, the court does not find that there was any delay on the part of the plaintiffs or their attorneys, or caused by them, which injuriously affected the right, legal or equitable, of the defendant in the matter of the rents of the premises.

IV. It follows that defendant's prayer for specific performance, with apportionment of rents, must be denied.

If the granting of equitable relief were governed by rigid rules or a plaintiff, on proof of a legal obligation on the part of the defendant, had an absolute right to such relief, I think the plaintiffs herein would be entitled to a decree of specific performance as prayed for. But equitable relief is conditioned by equitable considerations, and lies within the sound discretion of the court according to the circumstances of each case.

The court is satisfied from the testimony that the defendant, at first, hoped to close the deal before November 1st, 1912. He certainly expected that there would be an apportionment of rent from the time when he got his lease. He was disapointed as to the matter of fact and mistaken as to the matter of law, but these circumstances ought to be taken into consideration by the court. It is very obvious that he was ready, almost eager to complete the transaction as soon as possible.

The court, therefore, will grant the plaintiffs a decree of specific performance on the following conditions: *first,* they will account to the defendant for all rents accruing after November 9th, 1912; *second,* they will release the defendant from the payment of any rent or interest on the $20,000, for the first nine days of said month of November, and, *third,* they will pay the defendant interest on the $500 paid as earnest money from November 2d to November 9th, 1912. *Furthermore,* the plaintiffs will pay interest on all installments of rent, accruing since No-

vember 9th, 1912, and the defendant will pay interest on the rent of the premises from November 9th, 1912.

If the plaintiffs refuse to accept these conditions, the petition will be dismissed and the parties be left to such rights as they may have at law.