■ ᐧTRAMCO INDUSTRIES, INC., Appellant, v. BROAD HOLLOW ASSOCIATES, Defendant-Respondent and Third-Party Plaintiff.   TOWN OF HUNTINGTON, Third-Party Defendant.— Order, entered February 7, 1968, denying plaintiff's motion for summary judgment, unanimously reversed, on the law, with $50 costs and disbursements to the plaintiff-appellant, and the motion granted.   Parol evidence is admissible to resolve an ambiguity, not to create one.   The tax clause is clear both in its language and its application.   Its interpretation is a question of law for the court.   The year 1966/67 was the "first year after the full assessed value *  *  * has been determined".   (*Tobin* v. *Union News Co.,* 18 A D 2d 243, affd. 13 N Y 2d 1155.)   Concur — Botein, P. J., Capozzoli, Tilzer, McGivern and McNally, JJ.

■ In the Matter of CANNON POINT NORTH, INC., Respondent, v. TAX COMMISSION OF THE CITY OF NEW YORK, Appellant.— Final order appealed from entered on or about May 11, 1965, unanimously reversed, on the law and the facts, the petitions dismissed and the assessments reinstated, with $50 costs and disbursements to the appellant.   These are consolidated proceedings to reduce the real estate tax assessments for the years 1961–62 through 1964–65, on premises 25 Sutton Place South, a new, luxury-type co-operative apartment house known as Cannon Point North.   The petitioner failed in its burden of establishing by clear and convincing proof that the assessments were. erroneous, while the respondent-appellant on the other hand affirmatively demonstrated the correctness of the valuations fixed by the assessors.   A ground lease rental of $137,500 net per annum made in 1957, capitalized at the 5% rate fixed in the lease, established a land valuation of $2,750,000, or 147% of the final land assessment of $1,875,000.   The actual cost of construction of the 19-story and penthouse building completed in 1960 was $9,764,460, or 141% of the final building assessment of $6,925,000.   The sales price of the property (the *leasehold interest* and the building) to the petitioner in 1959 was $14,450,000, or 164% of its final assessment of $8,800,000.   The respondent-appellant's 36 sales, the only sales in the record, occurred between 1953 and 1963 at prices averaging 224% of the assessed valuations.   These transactions, too, served to show the consistent upward trend in the area.   In the face of this proof, as well as the credible expert testimony of the appellant's appraiser, the court was unwarranted in reducing the combined assessments by $2,350,000, or 7%.   Settle order on notice.   Concur — Stevens, J. P., Steuer, Tilzer, McGivern and Rabin, JJ.