Robert W. Bascom, J.
This is an action for specific performance of alleged contracts for the purchase and sale of real property. The City of Schenectady was the owner of certain parcels, title to which it had acquired in proceedings resulting from default in the payment of taxes. William J. Venezio, under date of April 25, 1966, addressed a letter to the Assistant Corporation Counsel of the city offering to buy three parcels, namely 487 Nott Street for $500, 526-528 Clarendon Street for $475, and 2440 Lenox Road for $525. The letter stated that it was the intention of Venezio to “ repair and refurbish” the properties. On May 19 Venezio delivered to the city his check for $1,500 which was the total of the prices mentioned in his letter. The check was marked “ Payment in full ” for the three parcels. The city cashed the check on July 7. On May 23 the Common Council adopted a resolution accepting the offer of William J. Venezio for the three parcels at the prices men- *623 turned, in Venezio’s letter and authorizing the execution of quitclaim deeds to be delivered after the buildings on the premises had been .repaired or demolished. On the first day of July following Venezio assigned to plaintiff, Van Curler Development Corp., all of his right, title and interest to purchase the three premises.
TJnder date of June 23, 1965, Van Curler Development Corp. addressed a letter to the Assistant Corporation Counsel offering to purchase 11 other parcels at a price specified for each parcel, this letter, like Venezio’s, expressing the intention to “ repair and refurbish ” the properties. On July 5 the Common Council adopted a resolution accepting the offer of Van Curler Development Corp. to purchase 977 Albany Street for $475, 3051 Albany Street for $490, 1616 Foster Avenue for $500, 1A-16 James Street for $250, and 1538 State Street for $475 and authorizing the execution of quitclaim deeds to be delivered after the buildings on the premises had been repaired. On September 19 Van Curler Development Corp. assigned all of its right, title and interest to purchase the Foster Avenue property to the plaintiff Grams.
On July 15 the Van Curler Development Corp. paid to the city the amounts offered for the five parcels, sale of which was authorized by the resolution of July 5.
The two letters containing the above offers and the two resolutions adopted by the Common Council constitute a sufficient memorandum to satisfy the Statute of Frauds. The complaint alleges that the first resolution above mentioned adopted by the Common Council was an acceptance of the Venezio offer to purchase the three parcels therein mentioned at the prices set forth and that the second resolution of the Council was an acceptance of Van Curler Development Corp.’s offer to purchase the five parcels therein mentioned at the prices stated. These allegations are' admitted in the answer. A contract may arise by the vote of the representative body of the municipality in accepting an offer made to it (Matter of Bochino v. Palmer, 203 N. Y. S. 2d 301). The minutes and record of the proceedings will satisfy the Statute of Frauds (Village of Lake George v. Town of Caldwell, 3 A D 2d 550, affd. 5 N Y 2d 727). The fact that repairs sufficient to comply with existing laws and ordinances were not spelled out in the contract does not render it uncertain nor leave room for future negotiation. Such details are specified in the applicable building and housing laws, codes and ordinances. Resort thereto would render certain any claimed uncertainty, which is sufficient (Parkhurst v. Van Cortland, 14 Johns. 15, 37).
*624 It was the usual practice for the City of Schenectady to sell properties acquired, as were those in question, upon the condition that repairs be made by the purchaser which would comply with the building code, housing standards, and like ordinances or laws, and according to a list of repairs to be furnished to the purchaser by the city Building Inspector.
On May 24, 1966, the day following the adoption of the resolution authorizing the sale of the three parcels which Venezio offered to purchase, the Schenectady Building Inspector made a written report to the Corporation Counsel, the City Manager, City Engineer, and all members of the Common Council which indicated that in his opinion the Albany Street properties, the Clarendon Street, Lenox Road, and Foster Avenue properties had deteriorated, were substandard and in violation of the Housing Standards Ordinance and that in his opinion 1538 State Street was in good condition with only minor violations.
In June and July Venezio and Van Curler applied to the city for building permits to make repairs to the eight parcels covered by the two resolutions which the Council had adopted authorizing their sale and such building permits were granted. Li August, through the Building Inspector and the Corporation Counsel, Venezio and Van Curler were supplied with a list of repairs required with respect to the Nott Street, -Clarendon Street, Lenox Road, 977 Albany Street and 1616 Foster Avenue to make them comply with the Building Code and Housing Standards Ordinance, but in no case did the building permits that had been granted cover the requirements specified by the Building Inspector and Corporation Counsel. No list of require'ments was ever furnished with respect to 1538 State Street, 14-16 James Street or 3051 Albany Street.
After applying for building permits, Van Curler proceeded with making extensive repairs to the Clarendon Street property on which $1,335.98 was spent, to the Nott Street property on which $3,214.83 was spent, to the 977 Albany Street property on which $378.72 was spent, on the 1538 State Street property on which $2,829.26 was spent, on the 1A-16 James Street premises on which $2,630.29 was spent, and on the 3051 Albany Street property on which $429.48 was spent inclusive of a $5 building permit fee in each instance. Only temporary security measure repairs were made to the Lenox Road property. After Van Curler assigned its right to purchase 1616 Foster Avenue to plaintiff Grams, she spent between $1,200 and $1,500, exclusive of labor, repairing that property. It is not disputed that as to this Grams parcel, all repairs required by the city were completed January 1,1967.
*625 Beginning in June, 1966 plaintiffs collected the rents from all the premises, sales of which had been approved by the Common Council, except 14 — 16 James Street and 3051 Albany Street. The three parcels which Venezio had offered to buy were assessed to him and the 1967 and 1968 city tax bills were sent to him as well as the 1967-68 and 1968-69 city school district tax bills. No. 977 Albany Street was assessed to Van Curler and the bill for the 1967-68 school tax was sent to it. It does not appear in the record to whom the other parcels were assessed after July, 1966. Van Curler attempted to gain access to the interior of the James Street, Lenox Road and two Albany Street parcels in order to make repairs but the persons occupying the premises would not permit Van Curler to enter for such purposes.
May 8, 1967 the Common Council rescinded the resolution which had been adopted July 5, 1966 authorizing the sales to Van Curler and directed the Director of Finance to refund to Van Curler the sum of $2,190, the aggregate purchase price authorized by the resolution of July 5, 1966. At the same time the resolution of May 23, 1966 authorizing the sale of the three parcels to Venezio was rescinded and a refund of $1,500 to Venezio was directed. There is a discrepancy between the number of the resolution adopted May 23, 1966 and the number of the resolution rescinded by the resolution of May 8, 1967. The resolution of May 23, 1966 is numbered 8362. The rescinding resolution refers to No. 8631. The court will treat this as a typographical error which does not go to the merits of the case. Both parties have proceeded upon the assumption that No. 8362 was the resolution rescinded. After the adoption of the rescinding resolution, the city sent checks of the amount of the refunds in each case to Venezio and Van Curler but did not refund the amount of the fees paid for the building permits. Venezio and Van Curler returned these checks to the city and demanded the delivery of the deeds, which was refused.
Van Curler made no more repairs subsequent to the fall of 1966 but continued to collect rents until April 1, 1968 >when the city began to collect the rents and assumed the expense of maintaining the properties. In the fall of 1968 the, city terminated the tenancies at 487 Nott Street and, while the building was vacant, vandals entered it and destroyed all the repairs Van Curler had made.
The city seeks to void the sales on the ground that, among other things, the prices offered for the various properties were far less than the actual value and that the proposed sales con *626 stituted a gift of public property forbidden by the Constitution of the State of New York. Section 1 of article VIII of the State Constitution, which the city claims is offended by the proposed sales, is designed to prevent the gift of public property, not to regulate the price or the adequacy of the consideration of sales of public property made in good faith (Matter of Ross v. Wilson, 284 App. Div. 522, 530, revd. on other grounds 308 N. Y. 605). There is a presumption in favor of the constitutionality of a legislative enactment which applies as .strongly to a municipal enactment as to one by the Legislature of the State. One who attacks the constitutionality of the act of a lawmaking body bears the burden of establishing invalidity beyond a reasonable doubt (Wiggins v. Town of Somers, 4 N Y 2d 215, 218-219; Defiance Milk Prods. Co. v. Du Mond, 309 N. Y. 537, 541). The city had the right to sell the premises in question pursuant to section 1166 of the Real Property Tax Law and the wisdom of any .such .sale is for the governing body of the city to decide and not for the court.
No evidence was offered that a sale of any of the parcels could have been made at a higher figure, nor as to the difference between the prices offered and the expense to the city by way of delinquent taxes. It cannot be said that there was not a substantial consideration for the sales and that being so, there was no gift within the meaning of the Constitution (Matter of Ross v. Wilson, supra). When sued for specific performance, the seller will not be heard to say that the agreed price was inadequate, nor can the buyer escape his obligation by claiming that the price is excessive. No action on the part of the State or one of its subsidiaries may impair the obligation of contracts (U. S. Const. art. I, § 10; Matter of Wa-Wa-Yanda v. Dickerson, 18 A D 2d 251). This is particularly true of contracts entered into in a proprietary capacity (16 C. J. S., Constitutional Law, § 285, pp. 1301-1302). In view of the well-founded principles above set forth, the resolution adopted May 8, 1967, purporting to rescind the resolutions authorizing the sales, were void.
It is claimed on behalf of the city that the Common Council made a mistake of fact in approving the sales, the mistake consisting of an erroneous idea as to the value of the various properties. Rescission for mistake of fact cannot be granted. Where a municipal corporation acts in its proprietary capacity, as here, it is subject to the same standards and restraints as are applicable to a private individual or a corporation in the conduct of similar business (O’Brien v. Town of Greenburgh, 239 App. Div. 555, affd. 266 N. Y. 582). In an appropriate case *627 a unilateral mistake may justify a court of equity in refusing specific performance, even when the mistake Avas caused by the representation of the party’s own attorney (Pimpinello v. Swift & Co., 253 N. Y. 159; Russo v. Friscia, 15 A D 2d 516), or such mistake may justify rescission in equity (Metzger v. Ætna Ins. Co., 227 N. Y. 411, 417). But these are cases where the alleged contract does not express the will of one party as he intended it. This is not such a case.
"Where the mistake of one party to a transaction would result in the unjust enrichment of the other, the party may have rescission decreed (Rosenblum v. Mamtfacturers Trust Co., 270 N. Y. 79). There is here, however, no unjust enrichment of plaintiffs merely because they contracted to buy real estate at what may have been bargain prices. On the contrary, to decree rescission would be unjustly to enrich the city to the extent of the value of the alterations and repairs to the realty.
Where there is a unilateral mistake by one party and fraud on the part of the other, equity also interposes to grant relief (Amend v. Hurley, 293 N. Y. 587). The city’s answer alleges these purchasers ‘1 took undue advantage by virtue of knowledge that they had acquired and of which the City of Schenectady was unaware, that the properties here were of a greater value than that which was offered.” And, further, that the purchasers “ concealed from the defendant City of Schenectady knowledge of the value of the real property.”
Not only are these not allegations of fraud on the part of the purchasers, but there was no proof that the latter had any knowledge of the value of any of the properties. Even if there had been such proof, it would avail the city nothing. There was no duty on the part of the purchasers to disclose anything. They dealt with the city at arm’s length. There were no negotiations. There was no confidential or fiduciary relationship existing between the parties. The purchasers made no false statements or representations, and did nothing to mislead. They simply made written offers Avhich the Common Council was free to accept, reject, or ignore. Any mistake as to value on the part of the Council, if one there were, arose out of its own negligence, or that of its oavu agents in failing to examine or to appraise the properties. On elementary principles of estoppel a unilateral mistake arising out of one’s OAvn neglect does not afford one grounds for relief, especially where the other party relied thereon to Ms detriment. In other words, one cannot rescind or repudiate a contract, absent fraud, for a mistake which existed in his own mind alone, where each of the parties had- equal and adequate means of information, *628 and each exercises his own judgment on the subject matter. The case thus falls within none of the categories in which one of the parties may invoke unilateral mistake to purge his apparent obligation under a contract which, in hindsight, appears to be to his disadvantage.
The city further contends that the alleged contracts are unenforceable by reason of the fact that the city failed to comply with Ordinance No. 10816, adopted in 1948, which requires the Common Council to refer to the Planning Commission all proposals for the sale of real property and shall not finally act thereon until the Planning Commission has made its report.
There is no penalty provided for a violation of this ordinance nor is there any provision as to what happens if the commission disapproves a proposed sale. It does not annul any action taken without regard to its provisions. It does not purport to govern the mode or method of contracting, nor touch on the subject of municipal contracts. The ordinance is a mere device for regulating the intramural affairs of the city. Moreover, it appears that this ordinance, although in force for the last 20 years, has not been observed by the Common Council in the sale of real property. Failing to comply with its provisions in the instant case constitutes a mere irregularity. The council had the statutory power to sell regardless of what action the commission might take. The city is estopped to avail itself of such irregularity in the exercise of a power conferred on it by law (Moore v. Mayor, 73 N. Y. 238).
The question next arises as to whether the contracts were, for the purpose of decreeing specific performance, entire or divisible, as to each parcel. The resolutions adopted by the Common Council authorized the delivery of “ deeds ” and a separate price is mentioned for each parcel. If the intention were to require repairs to be made to all parcels before the delivery of a deed, one deed would have sufficed. I interpret the wording of these resolutions to indicate divisibility and that a deed was to be delivered for each separate parcel upon completion of the repairs.
We must pass now to the question whether plaintiffs have performed as to any parcel. An action for specific performance cannot be maintained until the plaintiff has performed on his part (Audrey-Grace Gorp. v. Entroc Realty Corp., 287 N. Y. 150). All repairs required were completed at 1616 Foster Avenue and the condition precedent to the delivery of the deed has been met. Plaintiff Elsie Grams is accordingly entitled to the delivery of a deed to those premises.
*629 Repairs have not been fully completed at any other parcel and there is nothing to show that the city interfered with or prevented completing such repairs. At 487 Nott Street the electrical wiring and equipment were not repaired nor was a hot water pipe. At Clarendon Street the electrical wiring and equipment likewise were not repaired. At 977 Albany Street and at Lenox Road none of the required repairs were made except the roof at Lenox Road was repaired. As to the other three parcels, no list of repairs was ever furnished by the city nor requested by Van Curler. There is no proof that these premises have been made to comply with the applicable laws, codes and ordinances or that buildings on the Venezio parcels have been demolished in lieu of repairs. It follows that Van Curler is not presently entitled to specific performance as to any of these seven parcels.
The question remains as to the proper disposition of the rents. The vendee of real property is the equitable owner thereof (Carthage Tissue Paper Mills v. Carthage, 200 N. Y. 1; Williams v. Haddock, 145 N. Y. 144), the vendor holding the legal title as security for the consideration and as trustee for the vendee. Unless specially reserved, rent follows the reversionary estate (Marshall v. Moseley, 21 N. Y. 280, 282). By a grant of the reversion the rent passes with it as incident thereto (Bernstein v. Koch, 52 Misc. 550). The city made no reservation of the rents. The resolutions authorizing the sales provided for the execution of the deeds upon payment of the purchase price. The further and separate resolve that the deeds be delivered upon completion of repairs or demolition, Avas obviously to afford the city security for the performance of the stipulated conditions precedent (Hathaway v. Payne, 34 N. Y. 92, 103). Whether the deeds were ever actually executed does not appear, but equity Avill regard as done that which ought to have been done. The purchasers thus-became the equitable owners as of the dates Avhen the purchase prices were paid. As such, they were the OAvners to all intents and purposes. The premises were vendible, chargeable, devisable, insurable, and capable of being encumbered as theirs (Pelton v. Westchester Fire Ins. Co., 77 N. Y. 605). They were entitled to receive the rents thereafter accruing (Nellis v. Lathrop, 22 Wend. 121), and the city could not recover the same (Matter of Whitney, 144 App. Div. 117, app. dsmd. 202 N. Y. 580). It follows that plaintiffs are entitled to an accounting by the city for the rents it has collected since April 1, 1968.
*630 The foregoing shall constitute the decision herein pursuant to CPLR 4213 upon which an interlocutory judgment may be entered which shall:
(a) Direct the Mayor of the City of Schenectady to deliver to the plaintiff, Elsie Grams, a duly executed and acknowledged quitclaim deed of the premises described in Item 3 of paragraph 4 of the complaint, identified as 1616 Foster Avenue in said city;
(b) Dismiss the complaint of the plaintiff, Van Curler Development Corp., in all respects, without prejudice, except for the recovery of rents issuing from the premises described in the complaint, other than those mentioned in the last-above paragraph, subsequent to April 1, 1968;
(c) Dismiss the counterclaims of the defendant;
(d) Direct the defendant to account to the plaintiff, Elsie Grams, for the rents and profits issuing from the premises known as 1616 Foster Avenue, and to the plaintiff, Van Curler Development Corp., for the rents and profits issuing from the other seven parcels of realty described in the complaint since the 1st day of April, 1968, within 20 days of the entry and service of the copy of such interlocutory judgment, and that said accounting be referred to a Referee to be named in said interlocutory judgment to hear the evidence thereon, and to take and state the accounts between the said parties hereto, and to report said evidence and said accounts, with his conclusions, to this could for its further action herein; and
(e) Reserve all questions of costs until the final judgment is presented for settlement.