PAROCHIAL BUS SYSTEMS, INC., et al., Respondents, v BOARD OF EDUCATION OF THE CITY OF NEW YORK, Appellant.

First Department, January 4, 1983

APPEARANCES OF COUNSEL

*John F. Grubin* of counsel (*Mark Weinstein* with him on the brief; *Frederick A.O. Schwarz, Jr., Corporation Counsel,* attorney), for appellant.

*Thomas J. McNamara* of counsel (*Joseph S. Rosenthal* with him on the brief; *Friedlander, Gaines, Cohen Rosenthal & Rosenberg,* attorneys), for Parochial Bus Systems, Inc., respondent.

*Robert A. Kennedy* of counsel (*Richard L. O'Hara* and *Victoria Quesada* with him on the brief; *Colleran, O'Hara, Kennedy & Mills, P. C.,* attorneys), for Local 100, Transport Workers Union of America, respondent.

OPINION OF THE COURT

MURPHY, P. J.

Plaintiff Parochial Bus Systems, Inc. (Parochial) and defendant Board of Education of the City of New York (Board) entered into a contract on September 7, 1971 pursuant to which Parochial was to transport students to and from school. By agreement, this contract was extended through June 30, 1979. Parochial's drivers and its other employees were affiliated with Local 100 of the Transport Workers Union of America (Local 100). On or about February 16, 1979, a union affiliated with Local 1181 of the Amalgamated Transit Workers Union staged a wildcat strike against other bus companies that transported students for the Board. This wildcat strike occurred during the period February 16, 1979 through May 10, 1979.

Michael Rafferty, the vice-president of Parochial, states in his affidavit that he was unable to transport the school children because of violence accompanying the wildcat strike. A copy of a *New York Post* article from February 21, 1979 is submitted to buttress Rafferty's contention in that regard.

Harry C. Pauling, the chairman of Local 100, confirms that his members were ready, willing and able to work during the strike. However, Parochial made a decision that it was too hazardous for the buses to run. During the entire strike period, 100 to 300 pickets were purportedly posted outside Parochial's terminal. According to Pauling, there

were instances of property damage; threats were also made to the members of Local 100.

Mark Weinstein, an attorney in the Corporation Counsel's office, stressed that the Board found alternative methods of transporting its students. Thus, he contended that Parochial could have provided bus service during the strike period.

At the beginning of the strike, Parochial had been informed by staff members of the Bureau of Pupil Transportation (Bureau) that it would not be paid if it did not transport the children. After the strike, Rafferty sent a letter, dated July 26, 1979, to Florence Flast, Director of the Bureau. In that letter, he sought payment of $614,101.13 from the Board under the "Cessation of Service" clause in the contract. That clause reads as follows: "Inasmuch as this contract provides for a lump sum rate of payment, in the event that transportation service is not provided on any scheduled school day or days because of an event over which neither the contractor nor his employees had any control, such as the emergency closing of schools by the Board of Education due to weather or other conditions, and provided that the contractor was ready, willing and able to provide or attempt to provide service, then the contractor will be compensated for that day or those days just as though he had provided service."

Subsequently, Local 100 proceeded to arbitration against New York Bus Service, Parochial's parent company. The Board was asked to participate in the arbitration but it declined to do so. On October 18, 1979, the impartial chairman made a determination in favor of Local 100 against Parochial. Essentially, the impartial chairman found that both Parochial and Local 100 had been prevented from performing by reason of the wildcat strike. The arbitration award was stayed to permit Parochial to bring the present action.

Parochial brought this action on or about November 8, 1979 to recover damages for the strike period. In an order dated April 16, 1980, Local 100 was allowed to intervene as a party plaintiff. In its complaint, Local 100 seeks judgment against Parochial; no claim is made directly against

the Board. In its answer, the Board alleged, *inter alia,* that Parochial did not comply with section 3813 of the Education Law. It also alleged that Parochial was not entitled to recover payment for any period wherein services were not rendered.

Special Term granted plaintiffs' cross motions to dismiss the affirmative defense founded upon section 3813 of the Education Law. The court found that there had been substantial compliance with that statute. It denied defendant's motion for summary judgment on the ground that an issue of fact existed as to the scope and interpretation of the "Cessation of Service" clause.

The first question presented is whether a proper claim was made by Parochial under subdivision 1 of section 3813 of the Education Law. The Board emphasizes that it is the "governing body" of the New York City School District as that term is used in section 3813 of the Education Law. Therefore, it maintains that Rafferty's claim letter of July 26, 1979 was not effective notice under that statute because it was improperly mailed to Florence Flast, the Director of the Bureau.

The purpose of section 3813 of the Education Law is to give a school district prompt notice of a claim so that a timely investigation may be made (*Matter of Board of Educ.* [*Wager Constr. Corp.*], 37 NY2d 283, 289). Under this contract, the Director of the Bureau was delegated by the Board to supervise the work. During the strike, critical correspondence was exchanged between the staff of the Bureau and the principals in Parochial. Moreover, Rafferty's letter of July 26, 1979 was forwarded by the Bureau to the Board's Office of Legal Services (OLS). In a letter dated August 28, 1979, Assistant Director Sheldon Rosenblum of OLS informed Rafferty that his invoices would not be processed.

While Rafferty should have served his letter directly upon the Board, it is clear that the letter was promptly forwarded by the Bureau to OLS. The letter was timely served within "three months" after Parochial's claim accrued on May 10, 1979. (*Scherman v Board of Educ.,* 37 NY2d 839, 840.) That letter satisfactorily alerted the Board that a claim was being made by Parochial. Further-

more, the Board does not demonstrate that it was prejudiced by the fact that Parochial did not strictly comply with the statute. The affirmative defense under section 3813 of the Education Law was correctly dismissed by Special Term since Parochial substantially complied with the statute's mandates. (*Matter of Baker* [*Board of Educ.*], 309 NY 551, 557.) This court may, of course, give Parochial leave to amend its claim, *nunc pro tunc,* with the proper verification. (*Matter of Kingston City Schools Cons. v Sheraden,* 76 AD2d 993, 994.)

██ ██ The Board stresses that Local 100 has not filed a claim under section 3813 of the Education Law. However, in its complaint, Local 100 does not directly seek recovery from the Board. It seeks judgment from its coplaintiff, Parochial. In view of the fact that Local 100 is not suing the Board directly, it was unnecessary for it to file a claim under section 3813 of the Education Law. In passing, we merely observe that Local 100's complaint is of dubious merit since it does not state any basis for relief against the defendant Board. As will be developed below, Local 100's complaint will be dismissed for the prime reason that Parochial itself is not entitled to recover. Hence, Local 100 cannot recover over against Parochial.

The second question is whether Parochial is entitled to recover under the "Cessation of Service" clause. Parochial maintains that it had no control over the "event", i.e., the wildcat strike. It further contends that it was "ready, willing and able to provide or attempt to provide service", but that it was "prevented" from doing so by the wildcat strike. On the other hand, the Board takes the position that the wildcat strike did not "prevent" Parochial from providing service or "attempting" to provide service.

The rules of construction are only to be applied to interpret language of ambiguous or doubtful meaning. Where a court finds as a matter of law that a contract is unambiguous, evidence of the intention and acts of the parties other than exists in the contract itself plays no part in the decision (22 NY Jur 2d, Contracts, § 188, pp 22-23). Upon its face, the "Cessation of Service" clause is quite clear. Therefore, no proof need be taken as to its real meaning. It is true that Parochial did not have any control over the

"event", the wildcat strike. Hence, the more narrow issue presented is whether the strike "prevented" Parochial from fulfilling its duties under the contract.

There is no evidence in this record that Parochial's buses ever crossed the picket line. Each day of the strike, police protection was offered to Parochial but it chose not to seek such protection. Despite Parochial's timidity, the Board was able to transport the children with appropriate police protection for the duration of the strike by cabs and alternative means. Thus, the Board expended sums that would have otherwise been paid to Parochial.

Upon this record, Parochial has shown that it might have encountered some difficulties in effecting performance. It has not shown that performance was rendered impossible. (Cf. *Krulewitch v National Importing & Trading Co.,* 195 App Div 544, 547.) It is not for this court to speculate as to Parochial's real motive in not crossing the picket line. The overriding fact remains that Parochial did not even "attempt" to meet its contractual obligations for even one day of the strike. Had such an attempt been made and had damage or injuries resulted, a trial might now be needed to resolve the issue of whether performance was impossible. The plaintiffs' vague and conclusory allegations of property damage and bodily threats do not compel a different result. Aside from some minor incidents in the early days of the strike, the record is barren of any significant incidents that occurred during the remainder of the strike when police protection was in force.

The evidence conclusively establishes that Parochial did not undertake even a minimal risk during the course of the strike. Although it might have been able to perform, the proof shows that it was totally unready and unwilling to attempt performance.

For these reasons, the order of the Supreme Court, Bronx County (SILBOWITZ, J.), entered January 21, 1982, granting plaintiffs' cross motions dismissing the affirmative defense founded upon section 3813 of the Education Law and denying defendant's motion for summary judgment should be modified, on the law, by granting defendant's motion dismissing both complaints and, as modified, should be affirmed, without costs.

Ross, Bloom, Lynch and Kassal, JJ., concur.

Order, Supreme Court, Bronx County, entered on January 21, 1982, unanimously modified, on the law, by granting defendant's motion, dismissing both complaints and, as modified, affirmed, without costs and without disbursements.