**HANAM, B.V., a Netherlands Limited Liability Company, and IFICOR Investments, N.V., a Netherlands Antilles Limited Liability Company, Plaintiffs,**

**v.**

**Frieda KITTAY, individually and in her capacity as executrix of the Estate of Sol Kittay, Jeffrey Kittay, in his capacity as executor of the Estate of Sol Kittay, and Arlyne J. Imberman, in her capacity as executrix of the Estate of Sol Kittay, Defendants.**

No. 83 Civ. 1737(M.P.).

United States District Court,
S.D. New York.

May 7, 1984.

Skadden, Arps, Slate, Meagher & Flom, New York City by Jeffrey Glekel, Janice M. Lee, Yvonne Miller, New York City, for plaintiffs.

Simpson, Thacher & Bartlett, New York City, by Roy L. Reardon, Robert F. Cusumano, Susan Lyons, Eli M. Rosenbaum, New York City, for defendants Imberman and Jeffrey Kittay.

Hughes, Hubbard & Reed, New York City, by John M. Townsend, Robert J. Sisk, New York City, for defendant Frieda Kittay Goldsmith.

## OPINION

MILTON POLLACK, Senior District Judge.

Plaintiff has moved for partial summary judgment under Rule 56 Fed.R.Civ.P. on three negotiable promissory notes dated March 2, 1982, issued by Sol Kittay. The maker died three months later, on June 10, 1982. The notes have since matured. This is peculiarly a case for the use of Rule 56 to strain out fictitious and unworthy defenses to promissory notes used for dilatory purposes.

The guiding principle is set forth in Rule 56(e) of the Federal Rules of Civil Procedure which provides that:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial.* If he does not so respond, summary judgement, if appropriate, shall be entered against him. (Emphasis added).

When these sentences were added to Rule 56 in 1963, the Advisory Committee noted that:

The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.

Advisory Committee Note, Proposed Amendments to Rules of Civil Procedure for the United States District Courts, 31 F.R.D. 648–49 (1962).

As Judge Friendly has stated:

When the movant comes forward with facts showing that his adversary's case is baseless, the opponent cannot rest on the allegations of the complaint but must adduce factual material which raises a substantial question of the veracity or completeness of the movant's showing or presents countervailing facts.

*Beal v. Lindsay,* 468 F.2d 287, 291 (2d Cir.1972). *See also Schneider v. McKesson & Robbins, Inc.,* 254 F.2d 827, 831 (2d Cir.1958). The law in this Circuit is clear that even where there are allegations of illegality, "summary judgment cannot be defeated by the vague hope that something may turn up at trial." *Perma Research and Development Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969).

In this case, the opposition to summary judgment apparently is predicated on the belief that the Kittay estate may avoid summary judgment by offering conjectures, unsupported by any fact of evidentiary value in a multitude of irrelevant suppositions and innuendo contained in prolix affidavits and over 100 pages of memoranda of law. None of these raise an issue of fact sufficient to defeat the motion for summary judgment. The frolic and detour into the back history of Kittay's business relationships afford no defense to the contractual obligations undertaken and the negotiable instruments emanating therefrom and sued upon herein. Indeed, it may properly be said that it was wholly inappropriate to levy on plaintiff the massive harassment, obstruction, and expense in bringing this case to summary judgment.

### The Obligations Involved

The defendants have conceded the following:

Sol Kittay resided in Portchester, New York, from May 22, 1974, through his death on June 10, 1982. Pursuant to letter agreements dated May 22, 1974, Kittay borrowed $2,450,000 from Banque Commerciale (Cayman) Ltd., and $5,310,280 from Associated Trust S.A. Each loan is evidenced by a letter agreement between the parties and a promissory note signed by Kittay.

Pursuant to writings dated October 17, 1975, both loans were assigned with the consent of Sol Kittay. Associated Trust assigned its loan, together with the underlying collateral and pledge agreement, to Etablissement Pacodela. The Banque Commerciale loan, together with the collateral and pledge agreement, was assigned to Etablissement Stitac ("Stitac"), and in connection with the assignment, Kittay issued two new promissory notes payable at the Royal Bank of Canada in Georgetown, Cayman Islands, B.W.I.

Pursuant to an agreement dated March 2, 1982, the aggregate indebtedness of Kittay to Banque Commerciale, Pacodela, and Stitac, amounting to $8,571,534.95, was sold, assigned and transferred to the plaintiff, Hanam B.V., a limited liability company organized under the laws of the Netherlands. The transaction is expressed in a written agreement signed by all the parties, and an estoppel certificate signed by Kittay attached to the agreement reads:

I, the undersigned, Sol Kittay, hereby confirm and agree to all the terms here-

inabove set out, and in particular to the sale, assignment, and transfer to the Buyer as outlined above.

I also confirm that all amounts previously paid by me on account have, by mutual agreement, been applied firstly in recoupment of charges and expenses, secondly in repayment of principal and only the balance on account of interest, such interest being compounded quarterly.

Dated this 2nd day of March, 1982.

The agreement of sale recites in whereas clauses that Kittay is indebted in the amounts listed in Schedule "A" appended; that Kittay's liability as set forth in that schedule was secured by the collateral in a Schedule "B"; that the parties had agreed that the Kittay indebtedness and the collateral should be sold, assigned, and transferred without recourse by the creditors to Hanam; and that the creditors, the buyer, with the consent of Kittay, had agreed that Hanam should receive from Kittay concurrently with the execution and delivery of the agreement, four promissory notes, three of which for $2,142,883.70, and the last one for $2,142,883.85, made by Kittay in favor of Hanam as evidence of Kittay's indebtedness referred to in Schedule "A" attached, (in capital, interest, charges and out-of-pocket expenses) "for the purpose of repaying the total amounts so due as aforesaid, and maturing on the 20th March, 1982, the 20th January, 1983, the 20th January, 1984, the 20th January, 1985, respectively."

In open court, at a hearing held on March 14, 1984, when the motion for summary judgment was initially to be heard, in response to inquiries from the Court, counsel for the defendant stated that:

Based on my investigation, it did not appear to me that there was any question that he signed the notes, no question whatsoever. They were delivered. The documentation is there. There is no question about authenticity.

The Court reminded counsel for the defendants that counsel had said in his brief that "the defendants have not had an opportunity to discover that an issue for trial exists;" and "There is not a single fact in any of these papers that indicates that the agreement of March, 1982 was conditionally delivered with no intent to pay. Not a single person has averred that statement." In response counsel stated, "Sol Kittay is dead." "Your Honor, there is no one available to us."

Nonetheless counsel for the defendants requested a further opportunity beyond the deadline for discovery completion, namely, until April 16, 1984, to conduct still further discovery proceedings, and to take depositions. In view of allegations that had been brought to the Court's attention about alleged fraudulent conveyances of vast sums of money and property that took place between the decedent and his wife shortly before Kittay's death, the Court sought assurance that there would be a total freeze on the conditions as they existed at the time of the motion until the defendants were ready to go on with the motion. The plaintiffs had contended that during the time that it took this case to unwind and get to the ultimate evidentiary hearing, the plaintiffs were losing their position unfairly by the possibility that assets from the estate, or diversion of assets from the widow, to the prejudice of the plaintiff, might occur. Accordingly, the Court stated that its concern was that the status quo be maintained and that the condition for adjournment of the summary judgment hearing be that the Estate of Sol Kittay would not make any distributions of any kind without the consent of the plaintiff or Order of the Court until the decision of the summary judgment motion. Counsel thereupon assured the Court "We have communicated by telephone with representatives of the estate and have been assured that that is certainly doable and will be complied with." The hearing of the motion for summary judgment was thereupon adjourned and counsel for the defendants were given leave to engage in further discovery in the interim. The interim period has produced a vast store of documentary matter totalling well over six inches in height. Upon thorough perusal and analysis thereof, and de-

spite their volume, the defendants' answering papers raise no issue of fact sufficient to defeat Hanam's motion for summary judgment.

### Overview

■ None of the absolute defenses to a promissory note is applicable here. The notes were not void at inception; the Kittay signature thereto was genuine, not forged; nor unauthorized; Kittay was legally capable of making the contracts; his signature was not secured by misrepresentation of the character of the papers he was signing; the contracts were not void under an invalidating statute; the contracts did not lose their vitality by the occurrence of any subsequent event as by material alteration without Kittay's consent, lapse of time, or by discharge by payment in due course, or by bankruptcy proceedings, or otherwise.

There are no "personal" defenses to the notes, i.e., equities which the contracts, by reason of some act or circumstance occurring contemporaneously or subsequently, have become voidable or defeasible, in whole or in part, between the original parties. There has been no failure or absence of consideration; no fraud in the inducement or consideration, constituting defect of title; or wrongful negotiation of the instruments. Indeed, the sale of the obligations to Hanam, accompanied by the estoppel certificate executed by Kittay as part of the transaction, effectively cut off any such equities, if any had previously existed. The parties entered into a clear, straightforward, unambiguous agreement, announcing the sale of the indebtedness to the plaintiff, the amount due on the debt, and the transfer thereof to the plaintiff. Kittay signed a clear, conclusive estoppel certificate, certifying to the obligation being sold and confirming its scope and validity. He executed four negotiable promissory notes, further confirming the debt, and contracting to pay off the amounts thereof in four installments. There is no statutory invalidity pertaining to the contracts assumed. Three of the notes have matured, and the amount thereof, less certain payments made and interest on the balance as shown in a calculation submitted hereon as modified after that was filed, is now due and payable to the plaintiff.

There is no factual issue concerning either the execution of any of the notes or Kittay's and the Kittay estate's default on the notes.

It is well established that under circumstances such as these summary judgment is proper. See, e.g., Nutmeg Fin. Serv., Inc. v. Cowden, 524 F.Supp. 620, 621 (E.D. N.Y.1981) ("summary judgment is appropriate upon a showing of execution and default") (citing, Thrift Credit Corp. v. American Overseas Trading Corp., 54 A.D.2d 994, 387 N.Y.S.2d 930 (3d Dep't 1976)). Accord Citibank, N.A. v. Furlong, 81 A.D.2d 803, 804, 439 N.Y.S.2d 130, 131 (1st Dep't 1981) (summary judgment appropriate where there is no issue of execution or default); Badische Bank v. Ronel Sys., Inc., 36 A.D.2d 763, 321 N.Y.S.2d 320 (2d Dep't 1971) (same). See also Sterling Nat'l Bank & Trust Co. v. Fidelity Mortgage Investors, 510 F.2d 870 (2d Cir.1975) (affirming summary judgment on note where no issue of execution or non-payment existed); Republic Nat'l Bank v. Sabet, 512 F.Supp. 416 (S.D.N.Y.1980), aff'd without opinion, 681 F.2d 802 (2d Cir.1981), cert. denied, 456 U.S. 976, 102 S.Ct. 2241, 72 L.Ed.2d 850 (1982) (summary judgment granted despite existence of counterclaim).

### The Spurious Defenses Attempted

In accordance with Rule 3(g) of the Civil Rules of this Court, plaintiff annexed to its Notice of Motion a statement of the material facts as to which it contends there is no genuine issue to be tried. The Rule requires that the papers opposing a motion for summary judgment shall include a separate statement of the material facts as to which it is contended that there exists a genuine issue to be tried. The defendants accordingly submitted 11 categories of purported material facts as to which they contend that there exists a genuine issue to be tried. Close scrutiny of the opposing pa-

pers submitted by the defendants in support of their Rule 3(g) statement conclusively indicates that the defendants have failed to set forth any more than spurious defenses based on speculation and conjecture and devoid of factual content admissible in evidence. Each contention will be stated in numbered paragraphs, to correspond with defendants' 3(g) statement, and each will be followed by a statement of its factual and legal inadequacy.

1. The four promissory notes issued by Sol Kittay were not fully executed on March 2, 1982.

A. This is a meaningless and irrelevant statement concerning which no facts as would be admissible in evidence, Fed.R. Civ.P. 56(e), are asserted in any affidavit to support the contention.

2. Persitz controlled every entity to which indebtedness underlying the Notes was ever owed.

B. This is an irrelevant fact with no bearing on the legal liability of Kittay on the Notes he executed and the Agreement he signed.

3. Fifteen months prior to the contract of March 2, 1982 and the issuance of the Notes, Kittay paid off the entire principal balance of his debt of the three creditors with whom he made the contract of March 2, 1982.

C. This complete contradiction of the contract of March 2, 1982, and of the Notes signed and delivered by Kittay in connection therewith on March 2, 1982 has no factual support admissible in evidence or legal substance in any of the opposing papers submitted. The Parol Evidence Rule is a complete bar to this contention.

4. The Notes were never intended to be repaid as written, or to be separated from the Persitz relationship.

D. The uncontradicted proof is that Kittay was represented by an attorney in connection with the preparation of the Agreement and of the Promissory Notes made on March 2, 1982. Indeed, a memorandum from Kittay's attorney to Kittay, dated February 8, 1982, spelled out in detail the full legal obligations and liabilities which Kittay would undertake by executing the Promissory Notes. Nothing in any of the opposing affidavits spells out factually, with admissible evidence, that the Notes were not intended to be repaid or were not intended to be binding. Furthermore, no ambiguity appears on the face of the contract or of the estoppel certificate on the contract, signed by Kittay, or on the Notes themselves. Therefore, even if extrinsic evidence suggesting a contrary intent of one of the parties existed, it would be inadmissible in evidence. Parol may not be used to create an ambiguity where none exists. *See, e.g., Rodolitz v. Neptune Paper Products, Inc.,* 22 N.Y.2d 383, 292 N.Y.S.2d 878, 239 N.E.2d 628 (1968); *Parochial Bus Systems, Inc. v. Board of Education,* 91 A.D.2d 13, 17, 457 N.Y.S.2d 285, 288 (1st Dep't).

5. Persitz used his financial relationship with Kittay to the personal and economic advantage of Persitz.

E. This contention is irrelevant.

6. Persitz conducted illegal securities trading for Kittay.

F. This contention is irrelevant.

7. The Kittay indebtedness was less than the amount of the Notes.

G. The Parol Evidence Rule bars any such contention. As indicated above, Sol Kittay's lawyer specifically was involved in the lengthy negotiations and counselling leading up to the drafting of the Agreement and the Notes. The amounts reflected therein were specifically reviewed by Mr. Millimet, Kittay's counsel, who brought the figures to the attention of Kittay's accountant, Ms. Zeidman, who also brought the amounts to Kittay's attention, and Kittay, nonetheless, adopted the amounts as written into the Agreement and Notes. The defendants are now barred from rewriting formal documents, carefully negotiated and considered by Kittay and his counsel, and thereafter executed and delivered by Kittay. There is no admissible evidence supplied by defendants which dis-

putes the amounts of the indebtedness assumed by Kittay.

8. Kittay and Persitz did not expect the Notes to be repaid as scheduled.

H. There is no admissible evidence at all supplied for this contention, and the further response thereto is similar to the responses "D" and "G" in numbers 4 and 7.

9. The amount of the Notes included interest on past indebtedness which was miscalculated.

I. The responses "D" and "G" to numbers 4 and 7 also apply to this contention.

10. Certain expenses were improperly included in the amount of the Notes.

J. The same responses "D" and "G" as given to contentions 4 and 7 also apply here.

11. The Notes were satisfied and discharged pursuant to N.Y.U.C.C. § 9–505(2), by plaintiff's acceptance of the collateral posted as security for the Notes.

■ K. No admissible evidence is presented for the contention that plaintiff has foreclosed on the collateral; indeed, plaintiffs' proof, supportable by admissible evidence, is directly to the contrary. (This contention was seemingly abandoned by the time of the argument of the motion and not mentioned).

The Uniform Commercial Code entitles a creditor to retain and protect collateral received for a debt as security until the debt is satisfied. N.Y.U.C.C. § 9–207. Such retention cannot be equated under the statute with an election to satisfy the debt with the collateral only, in the absence of the statutorily required written notice from the creditor that the creditor has made such an election. U.C.C. § 9–505(2). *See, e.g., S.M. Flickinger Co., Inc. v. 18 Genesee Corp.,* 71 A.D.2d 382, 423 N.Y.S.2d 73, 76 (4th Dpt.1979) ("An election [under § 9–505] should not be implied when the means of certainty are spelled out in the statute."). Indeed, papers on both sides reciting the admissible evidence, show that the executors have continued to deal as owners of the collateral and have sought and obtained offers in connection with the sale thereof, similar to their proprietary conduct with respect to portions of the collateral pledged to plaintiff and actually effecting sales of part of it, leaving the proceeds, however, on deposit with a foreign agent.

The foregoing are all of the contentions which defendants submitted as their 3(g) statement. However, the defendants subsequently have raised, without amending their 3(g) statement, various contentions of alleged illegality dating many years ago, which allegedly infected the business relationship and transactions between Persitz and Kittay prior to the extensive negotiation and subsequent execution and delivery of the Agreement and the Notes on March 2, 1982. Illegality as claimed in these contentions provides no defense to liability on the Notes—such contentions are legally baseless or irrelevant, and starkly devoid of any support admissible in evidence. Nonetheless, these claims of illegality will be discussed below as if they had been asserted properly in a 3(g) statement; the contention will be numbered, and the response will follow in lettered paragraphs.

(1) Persitz and Kittay engaged in a tax evasion scheme relating to a withholding tax liability.

A. There has been no showing of any such illegality by facts admissible in evidence. The *uncontroverted* facts underlying the contentions propounded by defendants indicate that the parties to the loan agreement sought, under the advisement of counsel, to structure the transaction so as legally to avoid or minimize withholding taxes on the Note payments, and that they further agreed that if it turned out that such payments were subject to withholding requirements, Kittay would be responsible therefor. The Notes are silent on the subject of withholding for taxes, and the defendants have adduced no admissible evidence to show an intent by anyone to illegally evade taxes or withholding requirements. The Court perceives no illegality in this procedure and understanding. This is

not "illegality," which strikes down a legally prepared obligation.

(2) Persitz was involved in 1974 in an illegal stock trading scheme on inside information regarding tender offers to be made involving a company which went "private" thereafter, five or six years prior to the execution of the Notes.

B. There is no factual support admissible in evidence for this random hypothesis and speculation, and at all events this contention is entirely irrelevant to liability on the 1982 contract and the Notes.

(3) Loans from Persitz to Kittay in 1974 violated the federal margin rules.

C. Defendants adduced no admissible evidence to support this contention; in fact, plaintiff set forth admissible evidence to show the parties structured the 1974 loans to assure compliance with the margin rules. In all events, this contention is wholly irrelevant, since no violation occurred or was operative at the time that the Notes were executed.

(4) Usury permeated the business relationships between Persitz and Kittay.

D. The May, 1974 loan agreement is the basis of that usury contention. The law applicable to this contention, however, rejects usury as a defense. The law chosen by the parties as the agreed applicable rule, was the law of England, under which, as the defendants concede, there was no usury. This choice of applicable law was wholly reasonable, since English law had a reasonable relationship to the agreements and the choice of such law was not violative of public policy. Performance of the agreement by payment to one of the two creditors under that agreement was to be made in the Cayman Islands, an English entity governed by English law. The other creditor was itself a Cayman Islands corporation. Under the circumstances, New York's choice of law rules will honor the parties' explicit agreement that English law applied to their contract. *See, Heller & Co. v. Chopp-Wincraft Printing Specialties, Inc.*, No. 82 Civ. 2862(MP) 587 F.Supp. 557 (S.D.N.Y. Sept. 21, 1982). In-

deed, since June 1974, the New York usury law does not even apply to loans or notes of the magnitude at issue here. N.Y.Gen. Oblig.Law § 5–501(6).

(5) Compound interest was involved in the pre-1982 transactions of the parties, in violation of New York law.

E. The interest claimed herein by the plaintiff on the Notes is not to be compounded. There is no reference anywhere in the Agreement or in the Notes to any future compounding of interest and no such interest is demanded. To the extent that the 1982 Agreement refers at all to the compounding of interest, it reflects an agreement by Kittay made *after* the indebtedness was due, and as part of the negotiated bargain, supported by consideration, to pay interest in the future at normal rates on the previously accrued interest. There is no authority cited to the Court that such an agreement is in any way unlawful.

### *Fair and Ample Discovery Has Been Had by Defendants*

This action was commenced in March of 1983.

The scheduling order required by Fed.R. Civ.P. 16, entered on October 11, 1983, laid down dates for discovery of documents, depositions of witnesses, submission of proposed findings of fact and conclusions, and fixed the trial date for June 4, 1984.

One year after inception of this suit, during which time defendants' counsel obtained documentary disclosure they requested and the deposition they considered to be necessary, two new firms of attorneys were substituted for the executors and Mrs. Kittay. The new lawyers proceeded to make demands for more documents and more depositions. These were completed up to a point, and plaintiff then moved for summary judgment.

After this case had been pending for a year, during which the original attorneys had engaged in the discovery procedures they considered to be necessary, the new attorneys for the defendants stated that

"the defendants have not had an opportunity to discover that an issue for trial exists." This statement was made on the initial return date of the Rule 56 motion. Counsel was then requesting a continuance of the motion in order to acquire still further discovery. They pointed out that they were handicapped by the fact that the only person who could be of any help to them to say that the Agreement of March, 1982 and the Notes were conditionally delivered with no intent to pay, was dead: "There is no one available to us."

A continuance of the hearing on summary judgment was granted from March 14 to April 27, 1984 (later postponed to May 2, 1984). Feverish activity ensued—a spate of depositions was taken and documentary production continued.

At a pretrial conference with the Court on April 13, 1984, with all counsel present, regarding objections to inquiries blocked by claims of attorney-client privilege by attorneys who had served Sol Kittay, and, in one instance, Akiva Persitz, the Court asked Mr. Reardon, the new attorney for the executors of the Kittay Estate, whether he was being cramped by the discovery schedule and needed an extension. Mr. Reardon stated that he was *not asking for more time.*

*At no time* in the course of this litigation, since its inception in March, 1983, have the defendants, by their present or former attorneys, invoked a judicial determination of the scope of any purported discovery dispute not resolved by the parties, except only with respect to question the applicability of assertions by Kittay's former attorneys of the attorney-client privilege against disclosures.

The Court, prior to proceeding with the Rule 56 motion, conducted an evidentiary hearing on the matters raised against the grant of summary judgment contained in the affidavit of Robert F. Cusumano, an associate attorney on the staff of present counsel for the executors, claiming that they have been deprived of fair disclosures within the capacity of plaintiffs to provide and that the plaintiffs are in default of their obligations to provide discovery.

The Court has carefully reviewed each and every claim of deficient documentary production and of the plaintiffs' alleged inexcusable failure to submit for deposition the persons designated by defendants to be deposed. The Court finds that there is no merit to the Cusumano statements of default on the part of the plaintiffs.

It is the opinion of the Court that the belated contentions expressed on behalf of the executors by Cusumano on April 23, in effect in contradiction of Mr. Reardon's admission on April 13, as mentioned above, is a ploy to obstruct the fair consideration of the motion for summary judgment, and is professionally unwarranted. His outline of unfulfilled requests indicates illegitimate requests (uncalled for and excessive demands, corrupting the legitimate purposes and ends of discovery procedure) in the light of all the facts and circumstances pertaining to this case and the Court's control thereof.

Had defendants' counsel ever referred any of these irrelevant and oppressive excursions and demands to the Court, and invoked its authority to deal with the disputes, as they should have done if there was any basis for them, the Court would have, within its powers and discretion under the Rules effective since August 1, 1983, denied the requests as attempted over-discovery, ill-timed and unreasonably cumulative, and unduly burdensome, considering the legitimate needs of the case. The requests could not reasonably, in good faith, have been certificated by counsel, as required by the Rules, as proper demands. The demands referred to were, in the Court's judgment, excessive, interposed improperly, and represent harassment of an opposite party.

The Court holds now for then, that compliance therewith is not required from the plaintiff and is not reasonably necessary to afford defendants a fair opportunity to develop and prepare a legitimate defense to the Notes. The Rules place on a party seeking discovery, rather than the object-

ing party, the responsibility for invoking judicial determination of discovery disputes not resolved by the parties. Fed.R.Civ.P., Advisory Committee Explanatory Statement Concerning 1970 Amendments of the Discovery Rules. No application for any judicial determination was made by the defendants concerning any alleged default in documentary production or production of witnesses for depositions.

### The Amount to be Awarded

The amount to which plaintiff is entitled to obtain by summary judgment on the three matured notes, after allowances for payments, credits, and interest adjustments, is $4,268,118.93. Judgment shall be entered herein accordingly in favor of plaintiff and against the Executors of the Estate of Sol Kittay.

Submit judgment accordingly.