**In re L & V REALTY CORP., Debtor.**

**Bankruptcy No. 085–50551–21.**

United States Bankruptcy Court,
E.D. New York.

June 26, 1987.

**36**

Schwartz, Sachs & Kamhi, by Gary B. Sachs, Carle Place, N.Y., for debtor.

Summit, Rovins & Feldesman, by Alan E. Gamza, New York City, for Edmund & Mary Davidson.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

The debtor, L & V Realty Corp. ("L & V"), has brought on an application asking the Court to determine that the payment to Class II creditors of $5,500 per month for the first 12 months of the debtor's plan and the payment of $6,000 per month thereafter includes payment of interest on the deferred balance.

The debtor, in effect, is seeking an interpretation of the language of the plan confirmed by this Court on December 18, 1986. Some background may be informative, although unnecessary.

Only two creditors are in Class II: Edmund R. Davidson and his former wife, Mary J. Davidson. Their claims arise from the purchase by the debtor of the stock interest of Davidson in L & V. There has been a great deal of bad blood and hostility between the Davidsons on the one hand and the persons who have remained in control of L & V, as reflected in a previous opinion of this Court issued on July 2, 1986.

The only real controversy with respect to the plan of reorganization when it was formulated was how these Class II creditors should be paid their allowed claim of $375,000. The plan ultimately provided as to them as follows:

CLASS II—The allowed secured claim, if any, of the Class II creditors shall be paid in full, in cash, the allowed amount, if any amount, of their claim as follows: (a) The sum of $5,500 per month for the first twelve months and the sum of $6,000 per month thereafter until the principal balance is paid in full. The payments shall commence on the tenth day of the month following the effective date and be payable on the tenth day of each month thereafter.

(b) In order that Class II creditors receive the present value of their allowed claims which is the total of payments set forth in (a) above (hereinafter called "deferred amount") interest at the rate of 7% per annum will be paid by the Debtor on the deferred amount on a declining balance basis. Interest payments will be made on the same dates as the payments on the "deferred amount." Interest shall be paid from the Effective Date at the aforesaid rate and it shall be computed for actual days elapsed as if each year consisted of 360 days. All indebtedness outstanding after maturity, whether by acceleration or otherwise, shall bear interest at 7% per annum.

Since the plan has been confirmed, the debtor has been sending checks twice each month to Edward Davidson and Mary Davidson, each one in the sum of $2,750. The Davidsons have endorsed each one "For payment under (a) of Class II." The debtor now contends that the payments it has made embrace interest and that the Davidsons are not entitled to any more than they have already received. The debtor purports to find some ambiguity in the clear and lucid language of the plan mandating separate interest payments, based on an ambiguous exhibit attached to the Disclosure Statement, and negotiations the debtor's attorney had with counsel for the Davidsons before the Order of Confirmation was drafted. The claim is also made that larger payments are not feasible because the debtor's lease does not generate sufficient income for the payment of this amount. The debtor claims that its counsel thought the monthly payments of $5,500.00 during the first year of the plan included both principal and interest. The debtor, therefore, argues that there was no "meeting of minds with respect to the payment of interest."

The debtor urges that since its understanding was that the sum of $5,500 per month during the first twelve months of the plan would be inclusive of interest, no contract for the payment of interest over and above the $5,500 was formed. Still urging mistake, the debtor suggests that the Bankruptcy Court as a court of equity should rescind that portion of the contract which does not conform with L & V's intentions and relieve L & V of the unilateral mistake with respect to the payment of interest.

In many respects a plan is in the nature of a contract. This was well put by Bankruptcy Judge Babbit in *In the Matter of United Merchants and Manufacturers, Inc.*, 24 C.B.C. 220, 226–227 (Bankr.S.D.N.Y.1981):

> At its simplest, a plan is an offer of promises made by a debtor and accepted by the creditors following serious and frequently protracted negotiations. In many of its most vital aspects, a plan is a kind of contract involving, as it does, matters of offer, acceptance, performance and the like. Accordingly, disputed provisions should be interpreted in light of general contract principles ... This court hopefully will be pardoned if it borrows the historic meter of Chief Justice Marshall, albeit in considerably less heroic circumstances, that "it is a contract we are expounding."
>
> It follows, therefore, that this exercise must begin with the language used in the plan, ... mindful as the Court is of Mr. Justice Frankfurter's observation relevant to construction of statutes, but relevant here also that a problem of contract interpretation seriously bothers courts "only where there is a contest between probabilities of meaning." If the language is found to be clear and unambiguous, thus negating a contest "between probabilities of meaning," that language will convey the intention. (Citations omitted).

Under well settled principles of contract law the position of the debtor is wholly untenable. It flies in the teeth of the parole evidence rule. To quote *Raleigh Associates v. Henry*, 302 N.Y. 467, 476, 99 N.E.2d 289 (1951), "[S]ince the lease agreement is unambiguous, parole evidence as to what might have been in the mind of one party or the other as to the amount of renewal rent, was neither necessary or justified." As this Court noted in *In re Sapolin Paints, Inc.*, 11 B.R. 930, 937–938 (Bankr.E.D.N.Y.1981), "Extrinsic evidence cannot be invoked to create ambiguity where none exists." *See also, Tramco Indus., Inc. v. Broadhollow Associates*, 30 A.D.2d 522, 290 N.Y.S.2d 260 (1st Dep't 1968), *aff'd*, 23 N.Y.2d 841, 297 N.Y.S.2d 739, 245 N.E.2d 408 (1969); *Spector v. Sovereign Const. Co.*, 45 A.D.2d 673, 356 N.Y.S.2d 79, 80 (1st Dep't 1974) ("Parol evidence is admissible to resolve an ambiguity, not to create one.").

"Where ... 'the language is unambiguous ... conveying a distinct idea, there is no occasion to resort to other means of interpretation. Effect must be given to the intent as indicated by the language employed.'" *Western Union Tel. Co. v. American Communications Ass'n*, 299 N.Y. 177, 184, 86 N.E.2d 162 (1949) (Citations omitted); *see also, Parochial Bus Systems, Inc. v. Board of Education*, 91 A.D.2d 13, 457 N.Y.S.2d 285, 288 (1st Dep't 1983); *Northville Industries Corp. v. Fort Neck Oil Terminals Corp.*, 100 A.D.2d 865, 474 N.Y.S.2d 122, 125 (2d Dep't 1984). "It must be presumed that when an agreement is reduced to writing it embodies the full intent of the parties." *In re Shangri-La Nursing Center, Inc.*, 31 B.R. 367, 371 (Bankr.E.D.N.Y.1983); *see also, Harry C. Partridge Jr. & Sons, Inc.*, 48 B.R. 1006 (S.D.N.Y.1985); *In re Best Film & Video Corp.*, 46 B.R. 861 (Bankr.E.D.N.Y. 1985); *In re Creed Taylor, Inc.*, 10 B.R. 265 (Bankr.S.D.N.Y.1981).

It would be difficult to find language clearer than that employed to ensure that the Davidsons receive each month a fixed sum as principal and a second amount representing interest at the rate of seven percent per annum. It is unmistakable that the Davidsons are to receive two checks, one check under paragraph (a) for the principal and a second check under

paragraph (b) covering interest at seven percent. No other reading is possible.

The debtor was represented by able counsel when the plan was drafted, the plan was submitted to the Court by debtor's counsel, was defended by debtor's counsel, and was confirmed by the Court. The doctrine of mistake has no application here. But even if it did, it is clear from the cases cited by the debtor that the facts present here do not come within their scope. *See, Van Curler Development Corp. v. City of Schnectady,* 59 Misc.2d 621, 300 N.Y.S.2d 765, 774 (1969):

> On elementary principles of estoppel a unilateral mistake arising out of one's own neglect does not afford one grounds for relief, especially where the other party relied thereon to his detriment. In other words, one cannot rescind or repudiate a contract, absent fraud, for a mistake which existed in his own mind alone, where each of the parties had equal and adequate means of information, and each exercises his own judgment on the subject matter.

Moreover, if the debtor were to avoid its obligation to pay interest, the Davidsons would be unfairly prejudiced since they relied on the payment of this interest when making their determination to accept the plan.

If the debtor wishes to retain the benefits of a confirmed plan of reorganization, it must suffer the burdens.

It is the determination of the Court that the payment to the Class II creditors of $5,500 per month for the first 12 months of the debtor's plan and the payment of $6,000 per month thereafter did not cover interest and did not make the payments to the Davidsons required by the plan of reorganization. The debtor should promptly cure the arrearages in interest. Since no cross-motion has been made, no other relief is now being ordered.

An Order consistent with this Opinion is being issued simultaneously.